THOMSON-HOUSTON ELECTRIC CO. v. NASSAU ELECTRIC R. CO.

(Circuit Court, E. D. New York. November 10, 1899.)

PATENTS—INVENTION—ELECTRIC SWITCHES.

> The Thomson patent, No. 283,167, for improvements in electric switches or commutators, as to claims 1 and 4, the essential feature of which is the use of a magnet to dissipate, or prevent the formation of, an arc between the separated parts of the conductor when an electric circuit is broken by means of a switch, for the purpose of preventing the burning of such parts, is void for lack of patentable invention; the influence of a magnet on the arc formed in a disconnected circuit being previously well known, and its use to prevent the burning of the parts of a switch, as contemplated by the claims of the patent, involving, at most, merely an acceleration of its effect by the use of a magnetic force strong enough to extinguish the arc at once.

This was a suit for infringement of a patent. On final hearing.

Betts, Betts, Sheffield & Betts, for complainant.
William H. Kenyon and George J. Harding, for defendant.

THOMAS, District Judge. The question is whether the defendant infringes the first and fourth claims of letters patent issued to Elihu Thomson in 1883. The patent is for a combination, which carries the concession that each part is old (The Corn-Planter Patent, 23 Wall. 181, 224, 23 L. Ed. 161); and such is the fact. The parts are a switch, a magnet, an electric circuit, and the specifically avowed purpose of the patent is to prevent damage when the circuit is broken. The occasion for such preservation arises from the fact that when an electric circuit is broken, and the conductors are left proximate to each other, an arc forms, and passes from one conductor to the other; and, if the electrical current be sufficient, the ends of the conductors will be burned, and thereby deteriorated. Hence economy requires the earliest elimination of the arc; and in fact it may be dispersed so quickly by a magnet as to seem to have been nonexistent, the constant and obvious condition being that the magnet shall be of suitable power, and placed in proximity to the conductors. Since 1889 the magnet has been used to a large extent to disperse or to prevent the injurious arcs that otherwise form in breaking the circuits in the operation of trolley cars. In no other industry does the magnet appear to be used for the destruction or the prevention of the arc. Hence its present chief industrial use arose some six years after the issue of the letters, and, what is not important, its existing value in connection with trolley cars was not conceived by the inventor. While the patented combination did not go into any substantial use until some six years after the letters were issued, its use in connection with trolleys is, and since 1889 has become, extensive and valuable. The inventor, Prof. Thomson, applied the combination to a structure of his own, which structure was in other respects valuable, and the subject of patents. The structure has obtained a wide sale and use, as have other structures involving the art in question. Undoubtedly the use of the magnet in the manner and for the purpose stated has been an important factor in producing such sales, but it is considered that the development of the structures admitting of its use has made its value available. The defendant does not use the complainant's structure in the controllers connected with its cars, but does use the magnet to avoid the destructive influences of the arc. A precise survey of the complainant's claims and contentions, and an adequate examination of the state of the art previous to Thomson's alleged invention, are necessary. Claims 1 and 4 are as follows:

"(1) The combination, with an electric switch or commutator, of a magnet placed in proximity to the switch-contacts, or to surfaces between which a spark or flash is liable to occur, substantially as and for the purpose set forth."

"(4) The combination, with the contact points or surfaces in an electric switch or commutator, of suitable means for producing a magnetic field in proximity thereto, which field shall act by its attractive or repulsive influence to diffuse or displace any electric arc or current that may pass or tend to pass at the instant of break or commutation."

The complainant's interpretation of these claims deserves attention. The learned counsel for the complainant states that the invention—

"Is the combination of means for producing a magnetic field with the contact-points of an electric switch for the purpose of accomplishing new results,

namely, 'of (1) preserving the switch structure, and particularly the contact-points, from being burnt or injured'; (2) making a switch for use with considerable potentials a more compact structure; (3) making a switch capable of safely operating with higher potentials than had been previously possible."

Again it is stated that the invention—

"Consists of the combination, in an electric circuit of considerable potential, of a magnet, with and in proximity to the contact-surfaces of a switch, 'substantially as and for the purpose set forth,' to wit, to protect such contact-surfaces, to keep them clean, to prolong their life, and to enable them to be used with a higher potential current than would otherwise be possible."

Again it is said:

"What he [Thomson] discovered, and what previous to his discovery no one had known, was that an electric current of sufficient potential to generate a dangerous and damaging arc between the contact-points of a switch could, by the combination with and action of a magnetic field at those contacts, be deprived of its damaging properties, and could be 'moved on' so quickly that injurious results would not follow. His new structure was a switch combined with a magnetic field, in and by which this conception and discovery was utilized, with the result that such combined switch and magnet was not only more durable, and capable of use with currents of higher potential than any previously known switch, but was more compact, and required less separation of the contact-surfaces than any switch previously invented."

The accuracy of these contentions may be tested by turning to the letters patent, and gathering the expressed conception of the inventor. The specification states that the patentee has—

"Invented certain new and useful improvements in electric commutators or switches," and that the "invention relates to switch or commutator devices for breaking, changing, or shifting electric circuits, and more particularly to switches or commutators designed for use in connection with electric-lighting systems, although it is not confined to devices used in such connection, but is intended to include electric switches or commutators generally when used in combination with circuits designed to carry currents of considerable electromotive force, or of sufficient electro-motive force to cause a tendency to the formation of electric arcs across the switch-contacts on breaking circuit, or when used in connection with any other apparatus such that there is a tendency to the formation of arcs or sparks at the switch or commutator surfaces. The object of my invention is to increase the durability of electric switches or commutators, and to prevent damage thereto from the causes mentioned. More specifically, my invention is designed to prevent damage to the commutator brushes and segments by the formation of arcs or sparks at the commutators of dynamo-electric machines, and likewise to lessen the tendency to short-circuiting of the armature-coils by the residuary spark of rupture. To these ends, my invention consists in combining with the contact surfaces or points for an electric switch or commutator suitable means for producing a magnetic field in proximity to the contact-surfaces,—such, for instance, as a magnet whose poles are placed near to the said contact surfaces or points, so as to break, displace, or disperse any electric spark or arc that may form or tend to form at such contacts; said magnet acting for this purpose by virtue of the tendency of an arc or heated conductor to move out of or into a magnetic field, according to its direction. My invention consists, also, in the combination, with the commutator for a dynamo-electric machine, of a magnet or magnets, or their equivalent, a conductor conveying an electric current, placed in suitable proximity to said commutator at points immediately following those at which a commutator-segment leaves a commutator-brush, so as to prevent, by the diffusing or displacing action of the magnetic field thus brought to bear, any electric arc or flash or spark at the instant of rupture of circuit between the brush and segment. * * * The magnet may be either a permanent or electro magnet. In the latter case it may be charged from any source. If used in connection with a dynamo-machine, it might be charged by the current, or a

portion of the current, generated by the machine. Any desired form or construction of electro-magnet may be employed, and said magnet may be applied in any desired way, provided it be suitably arranged to bring the attractive or repulsive action of a magnetic field to bear upon any spark, arc, or electric current that may pass or tend to pass at the time of breaking or commutation, so as to diffuse or displace the same. I have herein shown a magnet for producing or bringing a magnetic field to bear; but other means for producing or bringing to bear the desired magnetic influence may be employed,—such, for instance, as a conductor forming the path of an electric current. * * * It is plain that my invention is not limited to any particular form or construction of commutator or switch."

It will be observed that the inventor's object was to increase the durability of the conductors by preventing injury thereto. The other advantages suggested by complainant's counsel, to wit, compactness of structure, the safe employment of higher potentials, and other benefits, arise from the fact that immunity from such injury is secured, although not detailed in the letters.

The combination of claims 1 and 4 consists of a magnet or magnetic field, placed in such proximity to the contact points of an electric switch as to diffuse or displace any electric arc, spark, or flash which may pass or tend to pass at the instant of disconnecting the circuit. The vital conception is the adjustment of the magnet to the electric switch, so as to produce the desired result. Does the combination involve invention, in view of the prior state of the art? Much argument has been devoted to the meaning of the words "electric switch or commutator." Complainant's counsel states that "a switch is a structure having two or more stationary terminals, and a bridging connection, which is opened and closed at will by an operator." At one place complainant's expert Bentley states:

"A switch, in general, is an apparatus for controlling an electric circuit by separating or bringing into contact two electric conductors connected, respectively, to the source of electricity, whenever it is desired to manipulate the circuit, to open or to close it, or to direct it into new channels."

At a later period in the trial the same witness stated:

"In my opening deposition, I described the switch known to the art as comprising two stationary terminals connected to the opposite branches of a circuit, and a removable bridging piece inserted between said terminals to complete the continuity of the circuit, or withdrawn therefrom to interrupt the circuit."

It is evident that this definition is much more limited than the first. Mr. Bentley seems to contend that all known organized apparatus used for switching is within this definition. From this he appears to claim that the bridging piece is a component part of all known electrical switches. Defendant's expert, Dr. Kennelly, defines a switch to be "any means for effecting the opening and closure of an electric circuit at will." Prof. Wright, complainant's expert, states that a switch "is a device for opening and closing a single circuit in some regular and systematic manner." From the definitions of Kennelly and Wright, it would appear that the bridging piece is not necessarily a part of the switch. The letters state that the "invention is not limited to any particular form or construction of commutator or switch," but claims 1 and 4 seem to involve the use of some portion

of the switch for the purpose of conducting the current. For the time adopting the view that a segment of the circuit is a part of the switch, and is used as a bridging piece, the complainant's claim is that no person using such switch to break an electric circuit may employ a magnetic field to dispel the arc formed by the disunion at the terminals of the conductors. It seems to follow that the invention does not lie in the electric switch, but in the use of magnetism to dissipate the arc formed by a circuit interrupted by a switch. If the circuit be disconnected otherwise than by a switch, the case is not within the claim. Indeed, it is certain that the influence of a magnet upon such arc was well known long before the complainant's patent, although it may be doubted whether the magnet was ever applied to a circuit interrupted by a mechanical device called a "switch." Assuming for the moment that the dissipation of an arc caused by an electric circuit broken by some means other than a switch was known before complainant's patent, does the disconnection of the circuit by a switch add something to the art of dissipating electric arcs by the application of magnetism? If it was known in the art that the arc could be dispelled when the circuit was opened by hand, nothing was added to the art of dispelling arcs by adding that the switch be opened by a lever. If it was known that the arc formed in a circuit disconnected by any means could be dispelled by a magnet, nothing was added to such art by providing that the circuit should be broken by specified means. The opening of the circuit is a mere incident to operation. To what art, then, has the patentee made contribution? To the art of breaking electric circuits? This claim would be too broad, and could not survive. Is the addition, then, to the art of breaking with greater economy electric circuits by means of a switch? It seems to be this, if anything. But if the switch is a part of the conductors, and is capable of being moved in and out of contact with them, the things preserved are, in effect, the terminals of the conductors or electrodes; and such electrodes, and only such electrodes, were the things preserved under the former art, now presumed to have existed. The switch is endangered because it forms part of the circuit. It burns, if at all, because it is a part of the disconnected circuit. It is preserved because it has been performing the functions of a conductor, and its extremities are rescued because they are terminations of the conductors. The ends of the switch have become electrodes. Upon disconnection they are exposed to the perils of electrodes, and are saved accordingly. What was endangered before the incoming of the patent? The ends of the conductors. Hence, if the means of magnetic extinction were then known, nothing is done now, or endangered now, or saved now, otherwise than at the former period. The fact that the switch is made a severable division of the conductors, and is called a "switch," and it is stated that its ends may be saved from combustion, adds nothing to previous knowledge, and achieves no new result. Apparently, such new invention consists in attaching a handle to the segment of an electric conductor for the purpose of moving it in and out of continuity with the circuit to which it belongs, and extinguishing the arc formed at the points of discontinuity by means of a magnet. It is a means of interrupting the cir-

cuit in two places, with the usual result to the electrodes. If an electric switch be deemed a stated means of opening or closing an electric circuit, the handle, the pivot on which the segment turns, and the segment itself may be regarded as its essential parts; but no part of the switch is imperiled or preserved, save the segment, and that is not imperiled because it is a switch, or part of a switch, but because it is a section of the conductor, and the section where the disconnection is made. The complainant's definition of a switch seeks to individualize the segment, and separate it from the conductors, as if it were not a part thereof, for the simple reason that it moves in and out of connection. The arc passes from one electrode to another; that is, from the end of one conductor to the end of the other severed from it. That is done in the case of the so-called "switch," and is all that, in the nature of the case, can be done.

The conclusion is therefore reached that, if the extinction of such arcs by means of magnetism was known before the patent in suit, nothing has been added to any art by applying the knowledge to a circuit broken by a switch; the precise reason being that the switch is not exposed to or rescued from danger by reason of its being a part of a switch, but because it is a segment of an electric conductor. Therefore no economical advantage results to the switch as such, but to the conductors as such; and this was the exact event in the prior art. But the argument has proceeded upon the assumption that the prior art involved full knowledge that the magnet would extinguish an arc of the kind under consideration, where the current was of considerable potential. It may be considered what the complainant concedes to the prior art. Its counsel states that none of the scientists "had discovered that the burning effects upon the switch surfaces in a circuit of considerable potential could be prevented by the action of a magnet upon the arc. No one had pointed out that a destructive arc would be moved on so quickly as not to be destructive." The complainant's counsel further states that "some of the prior publications describe an always ruptured circuit, over which, when current flows, it flows only by maintaining an arc, and in connection with which it was shown that either by magnetizing a part of the circuit itself (experiments of De La Rive and of Rijke), or by bringing the magnet to the point of interruption, an arc could be deflected or extinguished. The arc was maintained, and was then deflected. * * * The most that can be said of the prior art was that it taught that an arc could, by means of a magnet, be deflected or ultimately extinguished, and the extinguishment somewhat accelerated, as compared with conditions where no magnet was used." The complainant would seem to differentiate the prior art from the patent in this: that the patentee showed that a magnet would not only extinguish the arc formed by a current of considerable power, but would do it so quickly as to render it harmless. If the prior art showed that a magnet would extinguish an arc, it would seem to follow that it was known that its extinguishment would stop its burning. The nature of the arc is to burn. The necessary result of the application of the magnet is to stop the burning. This nature and result existed as much before the patent as thereafter. If it were .

conceivably otherwise, the inventor has but stated a new advantage, which was unobserved before. This is not patentable. Nothing was done then that is not done now, save, perhaps, that a stronger magnetic force is applied to a stronger electric current; the one being strong enough to extinguish at once the other. Hence the arc is blown out at once. What was done slowly before is done swiftly now, by virtue of an increased magnetic power, aided, undoubtedly, by modern mechanisms. In other words, the extinction of the arc is now accelerated. But such acceleration is not stated in the letters patent, save as the conception of preventing damage involves it. In claims 1 and 4, the patentee was content "to diffuse or displace an electric arc." Whether this diffusion or displacement should be done gradually, or with greatest speed, is only suggested by the object in view. The desideratum was something that should blow out the arc. That was the problem. Now, it was well known that a magnet would extinguish an arc. For such purpose the patentee used it in his combination. If the invention suggests anything new, it is that the magnet will do its work before injury occurs. This is but a statement that the magnet has the power of acting more quickly than before, although there is no evidence of any limitation upon the celerity of its action at the earlier period. There is no change in the manner of applying the magnet, no new mode of operation, no new result, save in degree. The proximate mechanical results are the same in their nature. In Ansonia Brass & Copper Co. v. Electrical Supply Co., 144 U. S. 11, 12 Sup. Ct. 601, 36 L. Ed. 327, the court said:

"A mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means, with better results, is not such invention as will sustain the patent."

The fact is that the patentee does not necessarily describe, but in practice he uses, a magnet stronger, and capable of instant extinction of the arc. This indicates increased capacity for usefulness, but nothing of invention. Ansonia Brass & Copper Co. v. Electrical Supply Co., 144 U. S. 11, 12 Sup. Ct. 601, 36 L. Ed. 327; Light Co. v. Westinghouse (C. C.) 55 Fed. 490; Id., 11 C. C. A. 342, 63 Fed. 588; Machine Co. v. Keith, 101 U. S. 479, 25 L. Ed. 939; Roberts v. Ryer, 91 U. S. 150, 23 L. Ed. 267.

Under the concession of the complainant, illustrated by the quotations from the brief above given, it is unnecessary to review the prior art. The influence of the magnet, to the extent stated, was, and for many years had been, a part of scientific knowledge. The patentee applied it to what he called an electric switch or commutator, which for the purposes of this decision has been regarded as a stated means of opening or closing an electric circuit with a segment of the conductor incorporated in the switch. Long afterwards the operation of trolley cars required the quick extinguishment of electric arcs, on a scale not before contemplated. Thereafter Prof. Thomson devised a structure which involved the use of a magnet to extinguish electric arcs. He had formerly embodied this old art in a patent, and in consequence at the later period sought to monopolize it, without any

legal justification, as it appears to the court. Since the letters in truth reveal no use, function, mode of operation, or manner of application new in the art, the complaint should be dismissed.