### GRAPHIC ARTS CO. v. PHOTO–CHROMOTYPE ENGRAVING CO.

(District Court, E. D. Pennsylvania. March 9, 1915.)

No. 743.

PATENTS ⬥328—INFRINGEMENT—PROCESS AND APPARATUS FOR PRODUCTION OF ETCHED PLATES.

The Levy patent, No. 627,430, for a process and apparatus for the production of etched plates to be used as printing surfaces, while it covers improvements which are meritorious and discloses invention, *held* not infringed.

In Equity. Suit by the Graphic Arts Company against the Photo-Chromotype Engraving Company. On final hearing. Decree for defendant.

Robert M. Barr, of Philadelphia, Pa., and Otto Munk, of New York City, for plaintiff.

Howson & Howson, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The plaintiff claims for an alleged encroachment upon its proprietary rights acquired through letters patent No. 627,430, issued June 20, 1899, to the assignee of Louis E. Levy, of which it is the owner by mesne assignments. The patentee claimed the discovery of a process and the invention of an apparatus for producing etched plates to be used as printing surfaces.

The claims of the application are many. The plaintiff relies on four, Nos. 2, 5, 7, and 20. The first three relate to the claim of a process, and the last is a claim for an apparatus by means of which the process may be employed in the production of the plates. All the claims are defended against by a denial of infringement, and the process

claims by a denial in this respect of the validity of the patent for lack of inventive novelty and because the processes are not patentable.

The defendant deems its defense of noninfringement to be fortified by the fact that the apparatus used by it was made and used under the Holmstrom patent, No. 721,445. Each of the parties claims the right to this extent to array the authority of the Patent Office on its side. If a patent issued upon a finding of inventive novelty by the Patent Office could be sustained after issuance of letters by proofs of commercial novelty, the claims of the plaintiff could more easily be upheld. As, however, the courts can regard only inventive novelty, and as the process and apparatus in use and employed by each of the parties embodies in its full description much that is old, a review of the prior state of the art is called for.

The etching art is very old. The process still in wide use is simple. It consists essentially in preparing a plate of copper, if it is a subject in half-tone, or zinc, if it is a subject in line, by covering parts of it with what is termed a resist. The protected parts correspond with the picture or design to be reproduced on paper. The method or process of applying this resist is ingenious and interesting, but with this we are not concerned. The plate thus prepared is brought in contact with a mordant, which attacks or bites into the unprotected parts, with the result that the protected parts are left in lines or stipples which stand out of the plate in relief. By the application of the printers' art the design thus made is transferred to paper.

The apparatus formerly in universal and still in much use would seem to be almost crude. Roughly described, it consists of a tub or tray containing the mordant in which the plate is immersed. The erodent effect of the liquid is aided by gently rocking the tub by hand, and excessive erosion in the places most exposed to attack is prevented by removing the plate and reapplying resist where required. One defect in the older process is that, when an inroad is made on the plate to form the line or dot to be made on the printing surface, the mordant liquid will attack the metal laterally and undermine the line or stipple. This is called undercutting. The plate thus becomes weakened, so that it yields to the pressure applied in the printing process and the results are marred. Another objectionable feature is the danger to which the operator is exposed from the liquids used or from the noxious fumes generated. Still other deficiencies in etching methods might be noted. This is a rough outline of the commercial state of the art when the plaintiff's device was brought upon the market.

The need of improvement in process, or apparatus, or both, was recognized and made the subject of comment and discussion by those concerned. Sufficient evidence of this is disclosed by Anthony's Bulletin. The commercially new method in which the plaintiff claims to have a proprietary right has met the test of commercial use, although not to the degree which might have been expected. It has by no means entirely superseded the old, which it still largely in use. The merit of the new method involved is well attested by the fact that the plaintiff claims it to have been pirated by the defendant, who counters with the charge that the plaintiff is the receiver of that which was purloined

from those who preceded him in the field of discovery. The records and files of the Patent Offices in this and other countries evidence, and all the parties concerned bear witness to, the utility of the invention, if it be one. Its utility is therefore not in dispute.

The essential difference between what may be called the old commercial process and the new consists in this: By the old process the plate is brought to and immersed in the mordant. By the new the mordant is brought to the plate, by being spurted, dashed, showered, sprayed, or floated in vaporized form against or upon it. It is apparent that this difference in the method of applying the mordant calls for a difference in the apparatus employed. The process and apparatus claimed to have been invented by the plaintiff's patentee and those used by the defendant are alike in their general features. How far that of the defendant is an infringement upon the rights of the plaintiff can be determined only by comparing each with the other, and both with the process and apparatus known to the art at the time of the claimed invention.

A patent, to be valid, must possess inventive as well as commercial novelty. It is evident that any improvement in the old methods must involve a change in the process, or the apparatus, or both. If the process in its main features was retained, the change must be in the apparatus, and the indicated change in the method of bringing plate and mordant in contact called for some dynamic contrivance to project the liquid against the plate. Many of the features of the process and apparatus of each of the parties to this litigation, although not in the method in commercial use, were known to the art, in the sense that they had been brought to light and described in applications for foreign patents and in printed publications before the date of the claimed invention by plaintiff's assignor.

For the purposes of this general statement, it will be necessary to refer to the achievements of only one of these pioneer discoverers. The man referred to is Truchelut, a Frenchman, who conceived the idea of certain improvements in process and apparatus. These he embodied in applications for letters patent which were issued to him in France, Germany, and England. It had long been known that if hard particles, such as sand, were thrown by a blast against a plate, the plate would be eroded, and that, by protecting parts of the surface, lines and stipples could be produced, and the plate then used for printing purposes. The thought came to Truchelut that the erodent result might be accelerated by using the blast and a mordant in combination. This was followed by the further thought of using the liquid alone. The process called for some means of projecting the mordant and placing the plate as a target at which the mordant could be spurted. Truchelut devised such an apparatus, and patented and claimed to have employed it with success. The defendant asserts it to have been a success.

The eyes of the plaintiff can see in it only a laboratory experiment. Each of the parties has had constructed what each asserts to be a reproduction of the Truchelut device. The defendant shows successful results from its use. The trial tests made by the plaintiff spell failure.

This difference in results would seem to be dependent upon the distance at which the plate is placed from the nozzle of the pipe through which the mordant is forced. We have space only for the statement of the conclusion, which is difficult to deny, that both the plaintiff and defendant accomplish the results reached by the means pointed out by Truchelut. The process and apparatus, it is true, are modified and improved in many features, but the essential elements are present. The improvements are more marked in the methods employed by the plaintiff than in those of the defendant. The latter more closely follows the Truchelut plan.

The experiences encountered by the plaintiff's assignor in his journeys through the Patent Offices, and the history of his applications (too lengthy to be recited), as thus traced, show him to have been anticipated by Truchelut and others in both process and apparatus invention, and that the grant of letters patent were secured by him at the cost of admitting this anticipation and limiting his claims to the improvements he undoubtedly made. Every examiner who has passed upon his applications has made the finding we now make.

The improvements made in process and apparatus are meritorious, valuable, and possess inventive novelty. Their enumeration appears in the record, and is left to the able hands of counsel. Upon none of these features, however, has the defendant transgressed. Wherein the methods of plaintiff and defendant coincide, the features common to both are likewise features presented by the prior state of the art. The one feature with respect to which the truth of this observation is on its face less clear than in the other is this: The Truchelut process was conducted in the open. That of the plaintiff and defendant is carried on within an inclosure.

The claim of this feature twice appears: Once in claim 2 as part of the process claim—the plate during the etching process is kept "within an inclosed space." Again in claim 20 as part of an apparatus claim "an etching box" is called for in the combination which makes up the apparatus. In the first case, it is to be observed that the "inclosure" feature is throughout the application brought in to bring about the means of securing the cooling effect of an expansion of air. In this aspect of it there is no infringement by the defendant. The Patent Office history of the application lends color to such a functional limitation of the use of a box. If the claim is broadened to cover the fume-dissipating uses of a box, this is met by the fact, which is found for defendant, that boxes and other inclosures for this purpose were in prior use. This brings the plaintiff up against the principle that there is no patentable invention in the mere transference of a device from one art or trade to another for the same functional purpose. Ansonia Co. v. Supply Co., 144 U. S. 11, 12 Sup. Ct. 601, 36 L. Ed. 327.

Adding this feature to the Truchelut process and apparatus, we have the fact before stated that the features common to the methods of both plaintiff and defendant are not covered by the patents of either, and that in the features of the improved processes and apparatus, which are protected by the patents, the defendant has not infringed upon the exclusive use which is the right of the plaintiff. We there-

fore find (and this is as far as it is necessary to go) the fact of infringement in favor of the defendant.

The exceptionally clear and forceful presentation of the plaintiff's case by its counsel calls for and deserves a fuller discussion than our limits of time and space permit us to accord to it.

The bill is dismissed, with costs, and a decree to this effect may be submitted.