**HIGBY et al. v. A. B. T. MFG. CO., Inc.**
No. 6218.

Circuit Court of Appeals, Seventh Circuit.
Dec. 1, 1937.
Rehearing Denied Jan. 13, 1938.

Clarence E. Threedy, of Chicago, Ill., for appellant.

Carl S. Lloyd, of Chicago, Ill., for appellees.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

From a decree in the District Court finding patent 1,938,495 valid and infringed by defendant, the latter appeals, claiming that there is no sufficient evidence of title in plaintiffs; that the patent is invalid because anticipated and for lack of inventive skill and that defendant does not infringe.

The patent covers a pin ball game apparatus of the type commonly described as bagatelle, adapted for commercial use. Such apparatus, including a cabinet with a glass top, under which lies a board having a plurality of holes therein and carrying a number of outstanding pins, with a projector located at one side of the board for shooting or projecting balls over the board, and a floor upon which the balls drop, is old and well known. The dictionaries describe it as bagatelle or tivoli and refer to its use in Russia and Italy. Plaintiffs claim that the device of the patent, however, is a new combination, adding to the elements of the old art an inclined transverse runway and a cut-off device intended to limit the number of balls that may be played and prevent operation except when a coin is deposited. They insist that control of the cut-off device by means of the coin slide and utilization of the inclined runway, running transversely of the board, are essential differentiating features of their device over the prior art and that all the elements are so arranged as to achieve invention in the specific combination disclosed.

The parties have classified the claims in suit under two groups: Claims 1, 2, 3, and 18 constituting the so-called runway claims, and claims 6, 7, 8, 9, 20, and 23 the cut-off claims. Typical of the first group is claim 1 as follows: "Game apparatus comprising an inclined board down which balls may roll by gravity, means for projecting a ball toward the upper end of said board, a main inclined runway extending transversely of the board adjacent the lower edge thereof, means at the lower end of said runway for elevating the ball into projecting position, and a reversely inclined auxiliary runway at a higher level than said main runway and serving to direct the ball into the latter at a point spaced a substantial distance from said elevating means." Claim 6, typical of the cut-off claims, is as follows: "Game apparatus comprising a board having holes therethrough, means for projecting balls one at a time over said board, whereby such balls may enter said holes, gate means movably mounted beneath said board and serving normally to locked coin-controlled manually operated member for moving said gate means to release the held balls and permit them to fall through said holes, an inclined runway extending transversely of said board below the same and adapted to receive the balls passing through said holes, means adjacent the lower end of said runway for elevating the balls one at a time into projecting position, and a cut-off device associated with said gate means and coin-controlled member and serving, when the latter is shifted to move said gate means into ball releasing position, to prevent the passage of balls down said runway to said elevating means."

As to all claims, it is insisted by defendant, first that they are anticipated; second, that if anticipation is not complete, the prior art discloses development to such degree that the patentees, bound by notice of the same, exercised only mechanical skill in what they did.

Patent 185,239 issued to Keimig, 1876, disclosed a similar game apparatus, the board of which was inclined toward the upper end. From the latter, balls were impelled by a projector down the board to drop through one of several ball openings formed in the board. The patentee added to devices such as Keimig a main inclined runway and an elevating means for lifting the balls to proper place. Other patents taught the use in a similar game apparatus, in one form or another, of runways related to a ball elevating means for elevating. Suess 241,831 and Bailey 621,440 disclose these elements. True, Bailey used a so-called scoop for the direction of the balls on their return journey, not of exactly the same form as the "transverse" runway of plaintiffs. Apparently, however, it was the same conception upon the part of Bailey and his associate as that disclosed by the patentees and served as an equivalent to perform the same function.

Suess included in his patent the board, the ball projecting means, a main inclined runway, a ball elevator, and what is, apparently, an auxiliary inclined runway. The board was not inclined but those of Keimig, Bailey, Caille, and MacKenzie taught such form; and to utilize the old inclined board of the prior art with Suess certainly would not constitute invention. Apparently each of the elements, though not in the patentees' prescribed specific form, function in the same manner and with the same purpose as those of plaintiffs. The runways are not transverse in the strict sense of the word, but they accomplish the same result. Apparently, all that the patentees did was so to dispose the runway found in the prior art so as to run transversely of the board. The situation is similar to that in Ansonia Brass & Copper Co. v. Electrical Supply Co., 144 U.S. 11, 12 S.Ct. 601, 604, 36 L.Ed. 327, where the court said: "The utmost that can be said for Cowles is that he produced a somewhat more perfect article than Holmes; but, as was said by the court in Smith v. Nichols, 88 U.S. (21 Wall.) 112, at page 119, [22 L.Ed. 566], 'A mere carrying forward, or new or more extended application of the original thought, a change only in form, proportions or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means, with better results, is not such invention as will sustain a patent.'"

Upon careful analysis, claims 2, 3, and 18 do not differ substantially from claim 1.

Another patent, that of Rentz, 1,694,691, is of enlightening interest as to the group A claims. He disclosed the elements of Paulin and Froom in an inclined board, the holes or seats thereon for receiving the balls, the projector, the elevator, the inclined floor and the deflector means. It is said, however, that the two are distinguished in the fact that the runway in Rentz is not the equivalent of that of patentees and did not teach them anything in that respect. Obviously Rentz constructed a portion of his deflector practically at right angle with the side of the device and, equally as obviously, the balls might rest thereon without returning to the position of play. He had a deflector on the left which tended to direct the balls into the runway. All he needed to do in order to make the deflector on the right produce a deflecting result was to make its angle obtuse instead of 90 degrees. Rentz' board was not inclined, but, as we have observed, the use of inclined boards was already old.

It is unnecessary to decide whether there is complete anticipation. Clear it is to us that the status of the art, at the time the patentees made their device, was such that one dealing with the common bagatelle board and the different elements used in connection therewith, upon adaptation of the same to the modern use, exercised nothing but mechanical skill. The patentee's action did not arise to the height of invention. A mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means with better results, is not such achievement as will sustain a patent. Smith v. Nichols, 88 U.S. (21 Wall.) 112, 22 L.Ed. 566; Railroad Supply Co. v. Elyria Iron Co., 244 U.S. 285, 37 S.Ct. 502, 61 L.Ed. 1136.

We proceed to a discussion of the second group of claims. Ellison, Re. 17,961,

1917, covers a game apparatus of the bagatelle type. He employed a board with holes, a ball projector, and apparently all of the elements of the patentees except the coin slide and the accompanying cut-off apparatus. But he included a gate-moving mechanism which would seem to teach what the patentees did in this connection. Defendant contends that the gate-moving means is the full mechanical equivalent of the coin slide and cut-off means; that the inclined floor, in the sense of delivering a ball to an elevator, is the full mechanical equivalent of the runways of the combination, of the group B claims; that the latter accomplished nothing more than Ellison's inclined floor, and, further, that all the elements are old in the art. The ball elevator is the equivalent of that of the patent in suit, and when the ball seat is placed in an elevated position with respect to the opening through which communication is had between the inclined floor and the tube specified, a ball cannot pass from the floor into the elevator tube because the ball seat when elevated will furnish obstruction. Thus it is insisted that Ellison is the full mechanical equivalent of the patent in suit. He did not incline the board, but to do so was old. The exact form of the elements is not the same, and it may be that Ellison does not completely anticipate the two groups of claims, but he certainly teaches broadly a combination very similar to if not the full equivalent of that of the patentees.

Caille 711,383, 1903, described a similar combination including an inclined board on whch there are baffle pins and at the lower end pockets into which such of the balls as do not pass into one specified opening are received and retained by a gate. Upon release of a ball by the gate, it drops into a compartment of a drawer whence it passes into a filling spout communicating with a runway through which it is fed to an elevator by which in turn it is elevated into position to be projected again upon the board. Operated simultaneously with the gate and gate pin is a cut-off bar, the purpose and function of which, the patentee said, was that the nose of the cut-off bar "will be inserted between the first and second ball within the casing and as soon as the plunger is drawn out of the way, the inclined face" of the bar will "force the first ball into the cylinder for the plunger, while the adjacent ball is prevented from following," by the bar. True Caille received the balls from the compartment and then fed them into the runway through the filling spout. But this difference it is not believed impinged upon the scope of the general teaching of the patent.

The District Court believed that Caille did not disclose the cut-off means of the patentees; that his device did not perform the same functions and, in fact, had no useful function. But it seems to us that the cut-off member, like the cut-off pin of the patent in suit, does function to obstruct the balls in their entry to the elevator and that this obstruction takes place when the gate means is dropped to release the balls retained by it. Plaintiffs contend that the Caille is not the equivalent of their device but it seems to us that his instruction in elements and functions was of such character as to make the patentees' achievement merely the product of mechanical skill.

MacKenzie 754,377, had a similar device. In it, the balls passed, by inclined runways, into a compartment of a drawer, then to a box and then, by way of the latter's inclined floor, into another runway. MacKenzie's game was "check controlled"; a tally ball serving the purpose of the coin necessary to operate the device of the patent. The cut-off device was thus effective to prevent unauthorized operation. What we have said as to Caille's teachings applies also to MacKenzie.

We have examined the oral testimony as well as the documentary evidence and are convinced that, in view of the prior art, the patentees' accomplishment did not reach invention but rather amounted to the exercise of mere mechanical skill. The device is very nearly an aggregation, for, apparently, all the elements are old and each of them performs the same function that the prior art taught, and they have merely been put together in a new way from which results no new function.

The decree of the District Court is reversed, with directions to proceed in a manner not inconsistent with this opinion.