### GENERAL METALS POWDER CO. v. S. K. WELLMAN CO. et al.

#### Civ. A. No. 21228.

District Court, N. D. Ohio, E. D.

Aug. 22, 1944.

B. D. Watts, of Richey & Watts, of Cleveland, Ohio, for plaintiff.

George I. Haight, of Chicago, Ill., and Ray S. Gehr and C. T. Cox, both of Cleveland, Ohio, for defendants.

WILKIN, District Judge.

This is an action at law for patent infringement. Jury was waived. It was admitted that plaintiff owned both the patents described in the complaint and that the defendants had received notice of infringement. The defendants charged invalidity of the patents because of anticipation, want of novelty or invention, and failure to describe the alleged invention as required by the statute, 35 U.S.C.A. § 33, R.S. Sec. 4888, and they also denied infringement.

The essential facts are clearly presented by the evidence. The first patent in suit, 2,072,070, is concerned with a "friction article" made from a number of metal powders which together with other material are mixed, pressed, and sintered. The friction article was for use as a brake or clutch lining. The elements used and the processes employed had long been known to the science of metallurgy, a very old and highly developed art.

The second patent, 2,191,460, relates to a method of attaching material of the type referred to in the first patent, to metal backing plates. The second patent is concerned with an article of manufacture which falls within the general art of welding.

Fisher, the patentee and assignor of the patents to plaintiff, began his work for the plaintiff or its predecessor in business in August, 1929. He first worked as an electrical engineer. William Koehler had been making flocculent copper powder for the plaintiff or its predecessor for some time prior to Fisher's employment, and using it in conjunction with other materials for bearings and brake linings. The principal ingredient of such bearings and linings was such powdered copper, but carborundum, lead, tin, zinc, and graphite were also used in the mixture in varying proportions. Such ingredients were manufactured by mixing and pressing at various high temperatures. Soon the plaintiff's assignor became interested, began mixing and pressing, and developed compositions which were subjected to tests for availability.

The defendants were engaged in the manufacture of brakes, clutches, etc. Such business naturally stimulated an interest in powdered metal. Plaintiff was seeking an outlet for the powdered metal which it was making. Officers of the plaintiff informed the defendants of their work with copper powder together with other materials. McIntosh and Fisher of the plaintiff company demonstrated to the defendants a Ford automobile which had been equipped with brake shoes manufactured by the plaintiff. For a time plaintiff and defendant cooperated in certain development work in this field and extended their efforts into the field of welding.

Prior to 1932 there existed very serious clutch problems in the automotive industry. Such problems increased as the power and capacity of automobiles increased. The problem became quite acute about 1932 when the clutch linings then in use proved generally unsatisfactory for use in busses. The "conventional liners" at that time consisted principally of asbestos fiber in woven or molded form, combined with organic bonding materials. The friction to which these liners were subjected created such intense heat that it melted them. When their physical and operational properties were changed, their further use, if at all possible, became dangerous and unsatisfactory. As a result they had to be frequently replaced.

Many manufacturers were striving to devise a clutch lining that would slip smoothly when starting but would not slip when in driving engagement, that would not vary under varying conditions of pressure, temperature and speed, that would not score or be scored, and that would withstand the centrifugal, warping and twisting forces to which it was necessarily subjected.

In 1932 the Twin Coach Company heard of plaintiff's "friction article". It obtained some of the friction material and with plaintiff's cooperation installed segments as liners in clutches of its busses. Those clutch liners gave amazing results.

They were subjected to severe acceleration tests and worked smoothly and proved to have remarkable durability. The evidence leaves no doubt that there had been a very great problem, that repeated efforts had come short of solution, and that the plaintiff's friction articles supplied a long-felt need. Metallic clutch liners in a comparatively short time supplanted the "conventional liners" generally in the automotive industry.

The use of such metal linings soon gave rise to the problem of their attachment to the backing metal, and work was done simultaneously by plaintiff and defendants toward the development of a satisfactory method of attaching linings to their supporting structures.

When the Fisher application for the first patent came on for hearing in the Patent Office the Patent Office Examiner denied the application for want of novelty. The Examiner pointed out that the powdered metal art had already taught the use of the same materials and the same processes. To distinguish his work from the prior art the applicant contended that his friction articles showed a "metallic network" which was lacking in the prior art. He asserted that all prior articles in that field were agglomerates, were brittle and had no ductility, whereas his article had a substantially continuous metal network structure, was ductile and carried inorganic substances within the network. In support of his contention the applicant filed in the Patent Office his own affidavit and the affidavits of one Bezzenberger. These affidavits asserted that they were based on knowledge and experiments and that the prior art contained no network such as inhered in the articles disclosed by the Fisher application. The Examiner rejected the affidavits and the application on the theory that because the processes and the materials were the same as in the prior art the results would necessarily be the same. The applicant thereupon appealed to the Board of Appeals of the Patent Office. The Board allowed the Fisher claims on the assertions of the Fisher and Bezzenberger affidavits.

The issue presented to the Patent Examiner and to the Board of Appeals, and ruled on differently by them, is the same basic issue involved in this action; in other words, does the "friction article" of the plaintiff reveal invention? Does it possess the required novelty? Is it a new thing? That the plaintiff first supplied a successful metallic clutch liner there is no doubt. If what the plaintiff did, however, was nothing more than the application of an old article to a new use, it is not invention.

This court is constrained by the evidence to find that there was nothing novel in the "continuous metal network structure". Substantially the same structure is revealed in Defendants' Exhibit 48, which was made under the Gilson patent. The structural condition called a network in the Fisher application was shown to exist in articles made also under the Williams and Claus patents. The testimony of the experts and the inter partes tests demonstrated lack of novelty in the Fisher claims in this respect.

The file wrapper of the first Fisher patent containing the affidavits of Fisher and Bezzenberger was introduced by the defendants for the purpose of showing fraud on the part of the applicant. The plaintiff then argued that the defendant was bound by the statements in the affidavits which it had introduced as its evidence. This court feels that the affidavits should not be interpreted as intentional misstatements, in spite of the fact that subsequent experiments and evidence proved them to be inaccurate. The court does not feel, however, that the defendants should be bound by the statements of the affidavits when they were introduced for the purpose of showing that the patent was granted upon false statements. This court has been too deeply impressed by the seriousness, complexity, and reality of the issue to interpret contentions of either side as evidence of bad faith or fraudulent motive. As stated above, the same issue that was before the Examiner and the Board of Appeals is again presented here and, in the light of the additional evidence here presented, the court is constrained to hold that the plaintiff's claim of novelty (i. e., network structure) is not well founded.

■■ There remains for consideration the question of novelty of use. Did the plaintiff's application of this known composition to the solution of the clutch problem constitute invention? In the first place, it should be stated that this question arises only with reference to clutch liners. The same composition as that contained in the Fisher article was employed for brake liners before the plaintiff's application was filed. The work of the plaintiff's

employee Koehler with reference to brake liners antedated that of Fisher. Brake bands were sold to and used by the Cleveland Crane & Engineering Company prior to the Fisher patent. The Hudson Motor Car Company used clutch brakes made from the Genelite material prior to the Fisher patent. The plaintiff's only hope therefore lies in the fact that it first applied the "friction article" to use as a clutch liner. Does that application reveal such a new use as would entitle the plaintiff to a patent? Does the application of the known composition to the clutch-liner need meet the requirements of the statute? The court is constrained to find that it does not. Even if the court applies the objective test as advocated by counsel for the plaintiff, still the absence of invention is not overcome by evidence of utility, commercial success, and the satisfaction of a long felt want. An old composition of matter applied to a new and analogous use does not involve invention. Altoona Public Theatres, Inc., v. American Tri-Ergon Corp., 294 U.S. 477, 487, 55 S.Ct. 455, 79 L.Ed. 1005; Browning v. Colorado Telephone Co., 8 Cir., 61 F. 845, 846; Ansonia Brass & Copper Co. v. Electrical Supply Co., 144 U.S. 11, 12 S.Ct. 601, 36 L.Ed. 327; Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; Seghers v. Gardella et al., D.C., 55 F.Supp. 914.

As Judge Hand said, in Kirsch Mfg. Co. v. Gould Mersereau Co., Inc., 2 Cir., 6 F.2d 793, 794: "Objective tests may be of value vaguely to give us a sense of direction, but the final destination can be only loosely indicated. * * * there will remain cases when we can only fall back upon such good sense as we may have, and in these we cannot help exposing the inventor to the hazard inherent in hypostatizing such modifications in the existing arts as are within the limited imagination of the journeyman. There comes a point when the question must be resolved by a subjective opinion as to what seems an easy step and what does not. We must try to correct our standard by such objective references as we can, but in the end the judgment will appear, and no doubt be, to a large extent personal, and in that sense arbitrary."

This the conscientious judge regrets. Instinctively he prefers the exercise of objective to subjective judgment. Naturally the court is prompted by a desire to see every man rewarded for whatever contribution he has made to art or industry. Such cases inspire the wish that every contribution of an improvement might have its adequate reward. But some change in the basic law will be necessary before the objective test can control entirely. In the meantime the trial court is constrained to find in accordance with the statute and the decisions.

■■ As a result of these conclusions the first patent is held to be invalid. The second patent is also held invalid because it was anticipated by the Short patent, 1,819,272. The method of welding by the heating process was well known prior to the Fisher patent. That such welding could be accomplished by electrical resistance was also old. The defendant employed the same method of welding prior to Fisher.

The other defenses set up in the answer are overruled. If the plaintiff's patents could be held valid, the court would hold under the evidence that they had been infringed. The plaintiff and its assignor pioneered in the use of composit metal for clutch liners, and the evidence creates the impression that the defendants made some use of that pioneer experience. But if that pioneer experience and accomplishment do not amount to invention, the plaintiff can not maintain an action for infringement.