## GENERAL ELECTRIC CO. v. JEWEL IN- CANDESCENT LAMP CO. et al.

### No. 8331.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 18, 1943.

Decided Dec. 22, 1944.

Harrison F. Lyman, of Boston, Mass. (Alexander C. Neave, of New York City, John H. Anderson, of Cleveland, Ohio, and Harry R. Pugh, Jr., of New York City, on the brief), for appellant.

Samuel E. Darby, Jr., of New York City (Paul Kolisch, of New York City, and Kessler & Kessler, of Newark, N. J., on the brief), for appellees.

Before BIGGS, MARIS, and JONES, Circuit Judges.

BIGGS, Circuit Judge.

This is an appeal from a judgment dismissing a complaint alleging infringement of a patent, No. 1,687,510, issued to Marvin Pipkin on August 16, 1928, on an application filed June 29, 1925, for an "Electric-Lamp Bulb." See 47 F.Supp. 818.[1] The patent has two claims and both are in issue.[2] Pipkin's specification states that the object of his invention " * * * is to produce an inside frosted glass [electric light] bulb which will be much stronger than those heretofore produced." He discloses a process for obtaining this result by subjecting the interior of the bulb, already etched by hydrofluoric acid, to a strengthening treatment. This consists of treating the interior surface of the bulb with hydrofluoric acid for a second time, the solution then employed being weaker. That the bulb, rendered very fragile by its first treatment with hydrofluoric acid, is greatly strengthened by the second, is not denied. Subjecting glass, already frosted, whether by sand blast or by acid, to a treatment of hydrofluoric acid is old in the art. This is conceded by the plaintiff. The concession is necessary in view of prior publications on the subject.[3] In the prior art hydrofluoric acid was put upon glass, already etched or frosted, for the purpose of giving it a fine "satin" finish or "matt". But nothing in the prior art suggested Pipkin's paradox that by destroying more glass the bulb would be strengthened.[4] Actually, the second treatment with the acid rounds the

---

[1] The patent was held to be valid and infringed by the Circuit Court of Appeals for the Sixth Circuit in General Electric Co. v. Save, 6 Cir., 82 F.2d 100, and by the Circuit Court of Appeals for the Second Circuit in General Electric Co. v. Wabash Appliance Corp., 2 Cir., 93 F. 2d 671, certiorari denied 303 U.S. 641, 58 S.Ct. 610, 82 L.Ed. 1101, rehearing denied 303 U.S. 667, 58 S.Ct. 749, 82 L. Ed. 1124. See also the concurring opinions in Fuso Electric Works v. Canadian General Electric Company, Limited, in the Supreme Court of Canada, 1940, 2 DLR 1. S.C.R. at page 371 and page 381, delivered in the suit on the Canadian patent based on Pipkin's disclosures. See also the decision of the High Court of Justice in the case of The British Thomson-Houston Co., Ld., v. Tungstalite, Ld., Reports of Patents, Design and Trade Mark Cases, Vol. LVII, No. 10, November 20th, 1940, on a process patent issued to Thomson-Houston Co., Ld.

[2] Claim 1 is as follows: "A glass electric lamp bulb having its interior surface frosted by etching so that the maximum brightness of an ordinary incandescent lamp comprising such a bulb will be less than twenty-five per cent of that of said lamp with a clear bulb, said interior bulb surface being characterized by the presence of rounded as distinguished from sharp angular crevices to such an extent that the strength to resist breakage by impact is greater than twenty per cent of that of the clear bulb."

The second claim is the same as the first except that the words "forty-five per cent" are substituted in lieu of the words "twenty per cent" as the measure of the bulb's strength to resist breakage by impact.

[3] See Sprechsaal, No. 48; The Etching of Hollow Glass, Sprechsaal, No. 49, published in 1907; Sprechsaal, Nos. 21 and 22, published in 1906; Reinitzer, Contributions to the Knowledge of Glass Etching, Die Glashutte, published in 1887; Tillotson, On the Relation Between the Physical Properties and Chemical Composition of Glass Etch Figures, The Journal of Industrial and Engineering Chemistry, published in 1917; Present Day Manufacture Working Up and Ornamentation of Finer Hollow Glass (Hohlbaum, 1910). See also the parent patent to Wood, No. 1,240,398, describing a similar two step etching process. The patent also states, "Such a screen is also useful for rendering the bulbs of incandescent lamps diffusing without at the same time causing the very marked loss in the efficiency of the lamp, which results from frosting the bulbs in the usual manner," and the Correll British Patent No. 166,133. See in particular Sprechsaal, No. 40 (1907), which describes a process which consists first in frosting or etching a hollow glass article and, as a second step, subjecting the etched surface to the action of an alkaline fluoride.

[4] Pipkin's specification states that the "probable" explanation for this phenomenon is that following the first treatment the surface of the glass is covered by depressions or pits having sharply defined angles, while following the second or strengthening treatment these depressions or pits become more or less rounded.

One of the plaintiff's expert witnesses explained the effect of the second treatment as follows, "Because in the instance where we have sharp angular crevices on the inside surface and the bulb is subjected to impact on its outer surface, the inner surface tends to be extended and therefore it is put into tension and the sharp angular crevices are the starting

sharply angular crevices created in the glass by the first etching. If the bulb is then subjected to a blow, it will not fracture as readily for its strength will have been greatly increased. This was the gist of Pipkin's disclosure and it was a very important one for the electric light bulb industry. We must now determine whether the District Court erred in holding the claims invalid.[5]

Pipkin's specification would be appropriate to support process claims. The claims of the patent purport to appropriate a "product." They are very close, however, to being "process" claims. See Red River Refining Co. v. Sun Oil Co., D.C., 29 F. Supp. 636, 641, affirmed by this court, 112 F. 2d 575. Each claim appropriates "A glass electric lamp bulb having its interior surface *frosted by etching so that * * *"* it will be "characterized by the presence of rounded as distinguished from sharp angular crevices *to such an extent * * *"* [6] that the bulb will have the specified degrees of light diffusion and of tensile strength. The italicized portions of the claims can be treated as describing functional characteristics but the claims are product claims and must be so construed. Even if we were to treat the claims as appropriating a process they do not embrace the two steps disclosed and described in Pipkin's specification and it is impossible to read the second step into the claims from the specification.

■ As product claims there is an insuperable bar to their validity. They appropriate an old product. If the claims of the patent were process claims and appropriated the two step process of Pipkin's specifications they might be held valid under the principle enunciated in Ansonia Brass & Copper Co. v. Electric Supply Co., 144 U.S. 11, 18, 12 S.Ct. 601, 604, 36 L. Ed. 327. In the cited case Mr. Justice Brown stated, "* * * if an old device or process be put to a new use, which is not analogous to the old one, and the adaptation of such process to the new use is of such a character as to require the exercise of inventive skill to produce it, such new use

will not be denied the merit of patentability." But it is obvious that the principle quoted cannot be extended for the benefit of a patentee who claims nothing more than a product old in the art. Nor is the plaintiff in the instant case aided by our decision in Gilbert Spruance Co. v. Ellis-Foster Co., 114 F.2d 771, 773. In the patent under consideration in the Gilbert Spruance case Weber achieved a new product and claimed it. In the light of the prior art the claims of Pipkin's patent were rightly held to be invalid.

The judgment is affirmed.

---

point for cracks, whereas * * * [when] the crevice has been rounded out the impact against [the] bulb * * * is such that the testing effort is spread over a very much larger area and the bulb is almost as strong as it was before frosting."

[5] It is not necessary to discuss the contentions of the defendants that Pipkin

did not make the oath required by law to his claims and departed abruptly in his continuation application from the disclosures of his original application, or that the claims are too vague and functional to comply with the requirements of R.S. Section 4888, 35 U.S.C.A. § 33.

