THOMSON–HOUSTON ELECTRIC CO. v. BULLOCK ELECTRIC CO. et al.

(Circuit Court, S. D. New York. May 3, 1900.)

1. PATENTS—JURISDICTION OF SUIT FOR INFRINGEMENT—NONRESIDENT DEFENDANT.

Under Act March 3, 1897 (29 Stat. 695), which gives a circuit court jurisdiction of a suit for infringement of a patent in any district in which the defendant shall have committed acts of infringement and have a regular and established place of business, and authorizes service upon the agent conducting such business, where a manufacturing corporation of Ohio, which there manufactures articles alleged to infringe, consigns them to a

second corporation, doing business in New York, which is given the exclusive right to sell the same within a given territory, being charged therewith at a fixed price, but privileged to return any part of the same and receive credit therefor, and the manufacturing corporation pays the cost of advertising, furnishes catalogues, etc., the latter is a participator in the sales of such articles for use in New York, and the office of the second corporation is its regular, established place of business, within the meaning of the statute.

2. SAME—VALIDITY—ELECTRIC SWITCHES.

The Thomson patent, No. 401,085, for a shield of insulating material to control the place of the arc in breaking a circuit by means of an electric switch, and which is an addition to the prior combination of a magnet with a circuit breaker for the purpose of dissipating the arc formed, discloses patentable novelty, and is valid; also, *held* infringed.

In Equity. Suit for infringement of patents. On final hearing.

Frederic H. Betts, for plaintiff.

George J. Harding, Clifton V. Edwards, and Wm. Houston Kenyon, for defendants.

WHEELER, District Judge. This suit is brought upon patents Nos. 283,167, dated August 14, 1883, for a magnetic field in an electric switch, to dissipate the arc found by breaking the circuit, and 401,085, dated April 9, 1889, for a shield of insulating material to control the place of the arc, granted to Elihu Thomson, and owned by the plaintiff. The defendant the electric manufacturing company is a corporation of Ohio. The defendant the electric company is a firm in New York, having offices at 220 Broadway.

The act of March 3, 1897 (29 Stat. 695), provides:

"That in suits brought for the infringement of letters patent the circuit courts of the United States shall have jurisdiction, in law or in equity, in the district of which the defendant is an inhabitant, or in any district in which the defendant, whether a person, partnership or corporation, shall have committed acts of infringement and have a regular and established place of business. If such suit is brought in a district of which the defendant is not an inhabitant, but in which such defendant has a regular and established place of business, service of process, summons or subpœna upon the defendant may be made by service upon the agent or agents engaged in conducting such business in the district in which suit is brought."

The bill alleges infringement in this district by sale of machines by the electric company, as Eastern agents of the manufacturing company, and service was made upon the firm as such agents. The manufacturing company has pleaded that it ought not to be held to answer, because its factory is in Ohio, and that it has no established place of business with the electric company, engaged in conducting such business as its Eastern agents, or in this district or state. The plea has been traversed, and proofs have been taken which show that the business between these defendants is done under an agreement in writing by which the manufacturing company grants to the electric company the exclusive right in the New England states, New York, New Jersey, Pennsylvania, Delaware, Maryland, and the District of Columbia for the sale of such machinery, appliances, and material as the manufacturing company might manufacture, on the basis of discounts from the published list or lowest selling prices f. o. b. at Cincinnati

(payments to be made in 30, 60, and 90 days from date of shipment), which the electric company would handle exclusively within the territory; the manufacturing company to do the general advertising, and furnish all catalogues and other descriptive matter; and the electric company to have the privilege of returning for credit any part of the consignment stock, they being charged with whatever should be necessary for putting the stock in the same condition as when it left the manufacturing company's hands. Making, using, or selling for use, would be an infringement; and the sale for use by the electric company in New York would, of course, be such. If the manufacturing company should do no more than to sell to the electric company in Ohio, that would be an infringement ending in Ohio. But the manufacturing company does more. It controls and participates in sales in New York. Its property does not pass absolutely to the electric company in Ohio, for the latter has a right to return it before sale. So the manufacturing company essentially promotes and actively participates in the sales in New York, when made there by the electric company for use. The title of the manufacturing company first absolutely passes by that sale for use, in which it participates through the electric company. Those who partake in torts are principals, and the manufacturing company so appears to be a principal in the sales for use here, and an infringer here. The offices of the electric company here constitute a regular and established place of this business. The issue joined upon the plea is therefore found for the plaintiff, and the plea overruled.

Since the argument of this case, Judge Thomas has, in Thomson-Houston Electric Co. v. Nassau Electric R. Co., 98 Fed. 105, in the circuit court of the Eastern district of New York, held patent No. 283,167 invalid for want of novelty, so far as it is in any way involved here. That decision should, of course, be followed by this court, while it stands unreversed and not overruled, and is so followed now, without attempting otherwise to reach a conclusion as to that patent in this case.

The inventor, in the remaining patent (No. 401,085), states:

"The object of my present invention is, generally speaking, to increase the efficiency and certainty of operation of arc-rupturing devices such as I have described; and, to this end, my invention consists in the application of a shield or septum of insulating material between the opposed surfaces of the arc-rupturing device and the electrodes or conducting-bodies between which the arc to be ruptured is formed, thereby preventing an arc from forming at any other portion of the electrodes or conductors than those directly subject to the arc-rupturing force, and permitting the arc-rupturing device, when of conducting material, to be applied, without danger of defective action, very closely to the electrodes. When my invention is applied to an arc-rupturing device, consisting of a magnet properly arranged with reference to the electrodes across which the arc to be ruptured is formed, the interposed insulating septum or shield may be formed by coating or covering the poles or metallic portions of the magnet with enamel, rubber, or other insulating material; enamel being preferable, on account of its incombustible nature. By this means discharges or arcs which might otherwise pass from the poles or electrodes placed in the magnetic field to the magnet-pole, thereby escaping the action of the magnet in rupturing the same, are prevented. I find it, in fact, desirable to apply the insulation-shield to all metal portions which are in proximity to the arc to be ruptured, and also to coat or cover the electrodes themselves with insulating

material at parts outside of the magnetic field, so that any possibility of a discharge or arc forming at any other portion of the conductors than those directly included in the magnetic field may be avoided. My present invention, on account of the layer of insulating material covering the poles of the magnet, allows such poles to be approached quite closely to the disrupting electrodes, thereby enhancing very much the intensity of the field. This, in fact, is one of the important results obtained in my present invention."

The claims in question are:

"(1) In an arc-rupturing device, a shield of insulating material, located between the surfaces of the electrodes, and adjacent conducting-surfaces of the device by which the arc is disrupted, as and for the purpose described. (2) An arc-rupturing device having its exposed surfaces adjacent to surfaces of the arcing-electrodes or bodies shielded with insulating material. (3) The combination, with electrodes liable to abnormal arcing, of an arc-dispelling magnet and a shield of insulating material between opposed surfaces of the magnet and electrodes, as and for the purpose described. (4) In an arc-rupturing device, a magnet whose poles are covered with insulating shields. (5) In an arc-rupturing device, an intercepting shield of solid insulator between the poles of an arc-rupturing magnet and the arcing-electrodes. (6) In an arc-rupturing device, magnet portions shielded by an insulating-covering, in combination with shielded electrodes having an exposed metal portion wholly within the space between the magnet-poles."

Currents of electricity are understood to have always been guided by insulation; and if these claims were merely for the principle of insulation, or for the use of ordinary means of insulation at this place, without more, as has been argued, they would doubtless be wholly void for want of patentable novelty. They seem to be, however, for the use of a shield, composed of such insulating materials in this place about and in combination with the separated parts of the circuit and the arc-dispelling devices, to control the arc during dispersion. That such a use of such means in just such a combination for this or any purpose is new is well proved, and not understood to be really disputed; but the subject of the invention is said to have been so circumscribed by prior knowledge and use as to leave no room for anything patentably new in this direction. The nearest things appear to be patents No. 68,407, dated September 3, 1867, and issued to Arthur Barbarin, for an improvement in lightning-arresters, and No. 316,077, dated April 21, 1885, and issued to William L. Stevens, for a safety-box for electric circuits; and the Stevens patent is the nearest of those two, and the only one of them which has an insulating device as a guard. The safety-box of that patent does not appear to be any arc-dispelling device of a circuit-breaker for constant use, but to be a device for suppressing the formation of an arc under the occasional and extraordinary circumstances of electrical storms, to guard against danger from lightning. It has not any combination with a circuit-breaker and a magnetic field for dispelling an arc formed by continual breaking of the circuit in the operation of powerful electric machines. The adding of this insulating shield to the prior combination of the magnet with a circuit-breaker seems to be new and highly useful and patentable, whether the combination of the magnet with still prior machines was patentable or not. These claims are for this addition of the shield to the combination of a magnet with a circuit-breaker, thus forming a new and useful combination, which was patentable as such. In this view of the invention covered by these claims, the in-

fringement of them by the defendant does not seem to be much in question, and appears to be made out.   Plea overruled.   Decree dismissing bill as to prior patent, and for plaintiff as to the latter patent.