MINNESOTA MINING & MFG. CO. v. IN-
TERNATIONAL PLASTIC CORPORA-
TION et al.

SAME v. COFAX CORPORATION.

SAME v. FREYDBERG BROS. STRAUSS,
Inc.

SAME v. BULKLEY et al.

Nos. 8926, 9093-9095.

Circuit Court of Appeals, Seventh Circuit.

Jan. 9, 1947.

As Amended Jan. 21 and 31, 1947.

Rehearing Denied Jan. 31, 1947.

Geo. I. Haight and M. K. Hobbs, both of Chicago, Ill., and E. G. Carpenter, Robert I. Coulter, and H. J. Kinney, all of St. Paul, Minn., for Minnesota Mining & Mfg. Co.

Samuel E. Darby, Jr., of New York City, Clarence J. Loftus, of Chicago, Ill., and Theodore S. Kenyon and Frederick Bachman, both of New York City, for International Plastic Corp. et al.

Franklin R. Overmyer, Roy E. Olin, and Adelor J. Petit, Jr., all of Chicago, Ill., for Cofax Corp.

Carlton Hill and Samuel W. Kipnis, both of Chicago, Ill., for Freydberg Bros. Strauss, Inc.

Harry W. Lindsey, Jr., and George N. Hibben, both of Chicago, Ill., for Bulkley et al.

Before SPARKS and MINTON, Circuit Judges, and BALTZELL, District Judge.

SPARKS, Circuit Judge.

These four appeals were argued at the same time before this court. With the exception of Cause No. 9093, all involve appeals from judgments of validity and infringement in plaintiff's suits for infringement of its patent to Drew, No. 2,177,627. No. 9093 is the appeal of the plaintiff from dismissal of its suit against the manufacturer of devices alleged to infringe, on jurisdictional grounds.

In cause No. 8926, plaintiff charged defendants with infringement of claims 4, 5, 6, 8, 10, 11, 15, and 16 of the patent, issued October 31, 1939, on an application filed June 10, 1933. No separate or distinct infringement was charged or found against the individual defendant, and all parties presenting the issues in the case refer to both appellants collectively as "the defendant." We shall do the same.

The nature of the alleged invention is specifically described in the specifications in the following language:

"This invention relates to adhesive sheets having a backing with a non-fibrous surface (such as normal or waterproofed films of regenerated cellulose) and a coating of normally tacky and pressure-sensitive adhesive united thereto. While not limited thereto, the invention relates especially to transparent adhesive sheets, to adhesive sheets in the form of adhesive tapes which may be sold in stacked or coiled form, and to adhesive sheets or tapes which are well adapted to the sealing or securing of wrappers composed of non-fibrous lustrous cellulosic films and the like."

Claim 4 is typical of claims 5, 6, 8, and 15, and claim 10 is typical of claims 11 and 16.[1]

The difference between the typical claims lies in the fact that the interposed transparent primer mentioned in claim 10 and its types is not specifically mentioned in claim 4 and its types. Since the adhesive is more cohesive than it is adhesive with respect to the non-fibrous cellulosic film, defendant contends that plaintiff uses the primer in order that the adhesive may be more firmly and sufficiently united to the cellophane. Hence, defendant urges that while the primer is not specifically mentioned in claim 4 and its types, it must of necessity be implied therein from the use of the words "said adhesive being firmly united to said backing." Under the evidence submitted, this conclusion does not follow. The examiner was of the same opinion, and it is not denied that plaintiff made and sold the product with and without the primer. True, plaintiff no doubt prefers the primer, but the claims cover both, and they are entitled to protection.

The accused tapes differ from claim 10 of the patent in two respects, and from claim 4 in one respect. They use no primer between the adhesive and the top surface of the film. The base of the cellophane film is coated with a film of organic material, which defendant characterizes as a *repellent* to the adhesive, on an overlying layer of the tape which serves to permit the tape to be unwound and to prevent offsetting of the adhesive on the back of the tape when it is unrolled. The defendant's adhesives vary in its different tapes, but in all cases they contain a larger percentage of resin or tack-producing agent than the one to two resin-rubber ratio specified in the patent. This is a difference of degree and not of kind.

The elements involved in the patent are quite old. The straight unmoistureproofed cellophane was in widespread use in 1913. Rubber-resin adhesives were used in the manufacture of shoes as early as 1905, and non-fibrous films were known and used in the photographic art in the last century. Such adhesive was well known to have a four-fold balance of adhesion, cohesion, stretchiness and elasticity, and yet prior to the disclosures of the patent, the thought prevailed that tacky rubber-resin adhesives, and the like, must be coated on cloth or paper tape backings in order to have a mechanical anchorage with a fibrous surface and a greater area of contact. That prevailing thought was proved to be erroneous by the disclosures of this patent, which taught that such adhesive will firmly bond to a smooth film backing, such as cellophane, even without an interposed primer, and yet the tape can be stripped from smooth surfaces without delamination of the tape or offsetting of the adhesive. This is due to the fact that the cohesive characteristic of such rubber-resin adhesive exceeds its adhesive characteristic.

Defendant admits that it uses the same adhesive with a higher percentage of resin than does plaintiff. It also uses a repellent[2] on the back of the film which merely decreases the adhesiveness of the top of the adhesive to the back of the film when wound for marketing. This no doubt accounts for the fact, which defendant stresses, that the accused tape unrolls with less effort than plaintiff's. This of itself would not be suffi-

1 4. "A transparent adhesive sheet comprising a non-fibrous transparent flexible film backing having non-porous surfaces and a water-insoluble normally tacky and pressure-sensitive transparent flexible adhesive coating, said adhesive coating being firmly united to said backing and the adhesive and backing being of such kinds that the back surface of the backing is inactive to the adhesive coating to a degree permitting unwinding of the adhesive sheet from rolls thereof without delamination or offsetting of adhesive."

10. "An adhesive sheet comprising a transparent flexible non-fibrous film having non-porous surfaces, a coating thereupon of a non-offsetting transparent normally tacky and pressure-sensitive water-insoluble adhesive, and an interposed transparent primer coating unified both to said surface and to said adhesive coating, the composite sheet being transparent and its parts so firmly united that it may be unwound from rolls thereof without delamination or offsetting of adhesive."

2 Consisting of Igepon A. P. and Solvar 404, equal parts, 10% alcohol in water to 4% solids.

cient to differentiate defendant's product from the teachings of the patent. It might be considered as an improvement, but if so, that fact would not avoid infringement.

Furthermore, this record discloses that tests of the accused product or method, without the use of the repellent, and that of the patent without the use of the primer, produced practically identical and successful results as taught by the disclosures of the patent. This is rather convincing that defendant's adhesives are the same, function the same, and secure the same results in the same way as the Drew adhesives, and that defendant's "repellent" is not essential to its tapes.

■ It is contended by defendant, however, that inasmuch as it ·does not use an inside "primer," but uses a backside "repellent" it can not be said that appellant infringes claims 10, 11 and 16. We think that in each case the use of the two-layer structure of cellulosic film and inside primer or backside repellent produces substantially the same result in substantially the same way by substantially the same means. In each case the result is to increase the factor of safety as compared to tape in which the inside primer, or backside repellent is omitted. This conclusion seems to be rather well supported by the concessions of defendant's expert, Whitby. We are convinced that defendant's repellent represents a mere inversion of plaintiff's use of its primer. In each case the adhesive is coated on a surface which has a higher specific adhesion toward it than has the back surface on the tape which is contacted when the tape is wound in a roll. For this reason we think each of the claims in issue is infringed as alleged.

Defendant contends that the patent is invalid because it is anticipated by prior public use. In this respect it stresses United States patents No. 1,850,760 to Mantell, and No. 1,760,820 to Drew. The former pertains to a method and means for shading and tracing designs such as pictures, portraits, photographic negatives, tracings and other transparencies and all similar things made by hand or otherwise which are susceptible of being shaded. Its object was to provide a service to commercial artists, who had been using frisket paper and shading films to be attached temporarily to drawings and the like as an aid in processing them for reproduction by photography and printing. It was important that the adherence be so slight that the frisket paper or shading film and the rubber coating could be later stripped from desired areas without pulling away the fibers of the paper, as that would alter the surface appearance when photographed.

For the purpose of maintaining the adhesive in tacky condition, keeping dust from the rubber coating, and protecting it, Mantell used rubber frisket cement and provided a cover sheet of Holland sheeting for the rubber coating. The evidence is uncontradicted that such tackiness was not thus preserved for any appreciable length of time, and the evidence is overwhelming that the adhesive used in frisket cement contains no resin whatever, but consists of pure rubber dissolved in benzol. Substantial evidence further discloses that Mantell's disclosure never became a commercial success, and no evidence discloses that there was ever a sale of his product either prior to or after Drew's date of invention. It does not relate to the adhesive tape art. It was not cited by the Patent Office during the prosecution of Drew's application, and we can see no reason why it should have been. See Adler Sign Letter Co. v. Wagner Sign Service, 7 Cir., 112 F.2d 264.

No. 1,760,820 is referred to by the parties as the Drew Masking Tape patent. The District Court found that the claims in suit are not anticipated by, and that they define invention over, that patent. The court found that the latter is concerned with masking tape having a fibrous, unified paper back, and does not describe nor suggest non-fibrous transparent backings having non-porous surfaces, and that the tape of that patent is different in function and principle of construction from the product set forth in the claims here in issue. The court further found that Drew did not conceive of the product of the claims in suit until after his application for his masking tape patent had been filed on May 28, 1928. It is sufficient to say that this finding of the court is fully supported by the evidence in this

case and we find no reason to disagree therewith.

Defendant further relies upon the following United States Patents as anticipating the claims in suit: Thornton and Rothwell, No. 786,534; Brandenberger, No. 1,221,825; Segall, No. 1,259,787; Hodgson, No. 1,467,108. We are convinced that none of these patents in any way anticipates the disclosures of the claims in suit.

The District Court further found that each of the claims in suit is sufficiently clear, definite and particular to apprise those skilled in the art and the public generally of their scope. Defendant contends that it has used an entirely different kind of adhesive from anything contemplated by Drew because it has employed a higher proportion of tackifier resin in reference to the rubbery base. However, there is no suggestion in the patent in suit that the numerical proportions which constitute the preferred proportion range in the case of cumarone resin and rosin would be the same for all other conditions of natural or synthetic rubber bases for all other tackifier resins. The testimony in this case discloses that the proper proportion range depends upon the kind of rubber base and kind of tackifier resin; and that a person skilled in the art, having the benefit of the teaching of the Drew patent, would have no difficulty in arriving at the proper proportions in any given case. We think such indefiniteness, if it can be called such, is fully warranted by the ruling of the Supreme Court in Minerals Separation, Ltd. v. Hyde, 242 U.S. 261, 37 S.Ct. 82, 61 L.Ed. 286.

Appellant relies strongly upon Halliburton Oil Well Cementing Company v. Walker et al., 67 S.Ct. 6, which held that the claims there in issue failed to make the "full, clear, concise, and exact" description of the alleged invention required by Rev.Stat.4888, 35 U.S.C. sec. 33, as that statute was interpreted in General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402. In the Walker case, the specification of the patent disclosed only one means for accomplishing the objective of the patentee, while the claim covered all means by which his purpose could be accomplished. Every structural element of the Walker claim, apart from the preamble was expressed by a "means" clause including the specific contribution of the patentee. In distinguishing the claim of the Walker patent from the claim of the Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 28 S. Ct. 748, 52 L.Ed. 1122, the Court in the Walker case said [67 S.Ct. 12]: "In that case, however, the claims structurally described the physical and operating relationship of all the crucial parts of the novel combination." The Court in the Walker case held that the invention in the Paper Bag case was adequately described. We are convinced that the claims here in issue cannot be said to consist with the claims of the Walker patent but they are in every respect similar to the claims in the Paper Bag case. See also O'Reilly v. Morse, 56 U.S. 62, claim 8, at page 112, 14 L.Ed. 601.

It is urged by appellant that some of the claims are functional. If so, such language is in words of limitation which express the relationship of the structural elements only, and for this reason such claims are not to be considered as functional.

Appellant also contends that the patentee made misrepresentations to the Patent Office in the prosecution of his patent, and that he unduly delayed the prosecution of its application and for those reasons, and for each of them, the applicant was guilty of inequitable conduct to such an extent that his patent should be held invalid. A reading of the evidence in this respect convinces us that there is no merit in this contention.

■ It is further suggested by appellant that the commercial success, which is very impressive in this case, is of little effect and should not be given undue weight. As a general principle this is true. However, it should not be ignored, especially where, as here, such success has been of such proportion as to be quite astonishing.

■ No. 9094. The defendant in this cause was charged with infringing claims 1, 2, 3, 4, 5, 6, 7, 8 and 15 of the Drew patent, No. 2,177,627. The first three claims refer to a colored type of tape, and the other claims in issue refer to the transparent

type. More need not be said concerning the validity of these claims, except with reference to claims 1, 2, 3, and 7, which were not in issue in Cause No. 8926. Claim 7 was not there involved, since it is restricted to regenerated cellulose film backing, while defendant International used only cellulose acetate film backings. Nor were claims 1, 2, and 3 there involved, because they disclosed an adhesive coating which includes coloring material visible through the transparent film backing, which produces the optical illusion that the backing film is colored. All of these claims were held valid, and while it is neither charged nor found that Freydberg was guilty of actual infringement, infringement was enjoined because of its threats of future infringement.

The court found that the accused tapes of this defendant both transparent and colored, were imitations of plaintiff's tapes; that they were sold and used for the same purposes in direct competition with plaintiff's products, and that the ordinary user could not tell them apart if they were not labeled. The court further found that this defendant had further infringed claims 4, 5, 6, 7, 8 and 15 by participating in the manufacture of the rolls of transparent, pressure-sensitive adhesive tape sold by it, by converting large mill rolls of adhesive manufactured by the defendant Cofax into small tape rolls by slitting and rewinding it at its own plant, and it threatened to continue doing so unless enjoined. This finding is abundantly supported by a preponderance of the evidence.

This defendant also contended that the claims relied upon resorted to functional statements therein at the precise point of alleged novelty, which rendered them invalid. This same question was raised in Cause No. 8926, and for the reasons stated in that part of the opinion we are convinced that there is no merit in this contention. The same may be said with respect to the charge of improper and misleading representations made to the Patent Office, and deliberate delay on the part of the patentee in prosecuting his claims.

This defendant further contends that, because the court "without any sup-

plementing opinion, signed and entered findings of fact and conclusions of law substantially indentical to those submitted by plaintiff's attorneys" this defendant "is entitled to consideration of this case by this Court * * as though no findings of fact had been made by the District Court." We know of no such law. If a finding of fact is supported by the evidence and given by the court, it thereby becomes the finding of the court, regardless of its author, and we are bound to consider it. We think these findings are amply supported by the evidence.

No. 9095. The contested issues here are the same as those in Causes No. 8926 and No. 9094 except as to name of the alleged infringers, and the claims involved, which in this case are numbers 4, 5, 6, 7, 8 and 15. They were all in issue in Cause No. 9094, and all but claim 7 were in issue in Cause No. 8926. What we said in those cases with respect to validity of those claims is applicable here. The findings of the court warrant the injunctive relief decreed.

The decrees of the court with respect to causes numbered 8926, 9094, and 9095 are affirmed.

No. 9093. The only question presented by this appeal is the alleged error of the court in sustaining this defendant's motion to dismiss the complaint against it and to set aside the purported summons upon this defendant, who entered a special appearance for the sole purpose of making such motion. The alleged grounds for the motion are that this defendant is not an inhabitant of the district over which the trial court has jurisdiction, nor does it have an office or regular established place of business within that district and division, as contemplated by U.S.C.A. Title 28, Section 109. It is conceded that this defendant, referred to as Cofax, is not, and never was a citizen of Illinois. It was organized under the laws of New York and was never authorized to do business in Illinois under the foreign corporation laws.

Cofax is a manufacturer of certain tapes which plaintiff charges, and, with respect to all defendants except Cofax, the District Court found infringe plaintiff's patent. Cofax markets its products through seven

or eight distributors, including Pax Tape Sales Company of Illinois, referred to as Pax, which handles this tape exclusively, at prices fixed by Cofax. The latter told the founders of Pax to form the corporation, and told them to use the name, Pax Tape Sales Company of Illinois.

■ Where a dealer solicits an order for goods in one State and forwards it to a manufacturer at its home office in another State and the goods are shipped direct by the manufacturer, the sale is considered as having been made in the latter State and does not constitute an infringement of a patent in the former State. Hence it has been held that such manufacturer did not become subject to service of legal process in the federal district of the dealer, in an action in the latter State for infringement of a patent covering the goods thus sold. Tyler Co. v. Ludlow-Saylor Wire Co., 236 U.S. 723, 35 S.Ct. 941, 59 L.Ed. 808; Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634.

The principle there enunciated, however, is not decisive of the question before us, for, under the statute, if Cofax at the time in question had a regular and established place of business within the jurisdiction of the District Court, service of the process upon Cofax could be made upon its agent, if any, engaged in conducting such business in that district. Summons and a copy of the complaint in this cause were attempted to be served upon Cofax by delivering copies thereof to Harve Ferrell, president of Pax Tape Sales Company of Illinois, at its usual place of business in Chicago. The question for our consideration is whether, under the facts presented, the usual place of business of Pax in Chicago can be considered as a regular and established place of business of Cofax, and if so, was Ferrell an agent of Cofax and engaged in conducting such business in Chicago.

Pax purchased tape from Cofax for resale in Illinois, but it made no report of such sales to Cofax. There was no interlocking directorate, no common officer or stockholders, and Pax paid its own rent and all other expenses of maintaining its office in Illinois. Pax advertised in the Chicago telephone directory that it was sales agent for Cofax. The president of Cofax testified that it had no office anywhere in the United States except in New York City. By affidavit, the president of Pax testified that he was not then and never had been an officer, director, stockholder, employee or agent of Cofax, and that the latter has never had a place of business either alone or in conjunction with Pax in Illinois. All of the products of Cofax were marketed through the distributors, each bearing the name of Pax Tape Sales Company, of the respective states of New York, Maryland, Illinois, Kansas and California. In addition, Cofax sold its merchandise to McKesson & Robbins Drug Company and Butler Brothers in Chicago. Pax sold to jobbers, and McKesson & Robbins and Butler Brothers sold to their retail customers. All of these companies were called distributors by Cofax, and not agents or special agents.

Cofax made sales to the distributors and invoiced them for the sales price. No tape was sent to distributors on consignment, and Cofax had no control or direction over any of the Pax Tape Sales Companies. There were no written contracts with them. It was understood that they were to handle the Cofax tape exclusively, and Cofax at no time, either directly or indirectly, made any contributions to Pax by way of money, loans or assets of any kind. There was substantial evidence to the effect that Cofax had no agent or manager, or anyone, who could speak for it in Illinois. It did not pay any of the expenses of Pax.

In sustaining this defendant's motion, the District Court relied upon Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634; Phillips v. Baker, 9 Cir., 121 F.2d 752; Mas v. Nu-Grape Co., 4 Cir., 62 F.2d 113; Owl Fumigating Corp. v. California Cyanide Co., D. C., 24 F.2d 718; Hazeltine Corp. v. General Electric Co., D.C., 19 F.Supp. 898, and Candas v. Agnini, D.C., 14 F.Supp. 21. We think these cases fully support the court's ruling, although they differ factually in some respects from the conclusions of some of the cases relied upon by plain-

tiff. In many of those cases we think the difference in conclusion is due to the difference in facts to which we shall presently call attention. Indeed, the facts in the present case in some respects are different from those cited by either party.

Appellant's contention is that "Cofax Corporation has so completely extended its personality into the (Chicago) district that it has a regular and established place of business in that district at the home of its agent." Its argument to support this contention is based on the alleged evidentiary facts that Cofax directed the organization of Pax; dictated its name; required that it sell no product except "Pax" tape; directed the prices at which Pax should sell it; and issued indemnity agreements when required by customers of Pax.

With one exception, we quite agree with this statement of the evidentiary facts. In the sense that Cofax directed that Pax be organized, we agree, but in the sense that it in any manner assisted in the act of organization, we do not concede. We think that none of these items of evidence or all of them, considered separately or with all other competent evidence constitute a sufficient basis for concluding that Pax' place of business in Chicago was a regular and established place of business of Cofax.

In support of its contention plaintiff appellant relies upon the following cases: In Neirbo Co. v. Bethlehem Shipbuilding Corp., Ltd., 308 U.S. 165, 60 S.Ct. 153, 84 L. Ed. 167, 128 A.L.R. 1437, the foreign corporation, prior to the suit, by its designation, under the state laws, of an agent for the service of process, had consented to be sued in the courts of that State, federal as well as state, and had thereby waived jurisdiction. Nothing of that kind appears here. Shelton v. Schwartz, 7 Cir., 131 F.2d 805, 807, was a patent infringement case; the defendant was a citizen of New York, and the suit was brought in Chicago. Some language is used in the opinion which, if pertinent there, has no relevancy here. Following this language appears the following: "However, our inquiry involves neither a factual nor a political question, merely a legal question." The controverted ques-

tion was not a factual one because the uncontroverted facts disclosed that two salaried employees of the defendant had charge of an office to solicit orders for it; their place of business was furnished and maintained by the defendant which also paid the rent therefor. The defendant's only serious contention was that inasmuch as these solicitors could not make sales but only solicited orders, the summons for the defendant could not be made upon them. This court there noted that the statute does not speak of the kind of business which those in charge of the regular established place of business shall do, and that in construing the statute, emphasis must be placed upon the existence of the regular and established place of business rather than on the nature or character of it. No such question is presented in the case at bar.

In Chadeloid Chemical Co. v. Chicago Wood Finishing Co. et al., C.C., 180 F. 770, the plaintiff was a resident of New York, and the defendant's agent maintained an office in New York, paid his own rent and stenographer, and advertised it as defendant's without protest from defendant. Defendants at times used such office as their own, and from there many sales were made, though most of the sales were concluded at the defendant's office in Chicago. The District Judge in that case held that the defendant corporation had a place of business in New York and was therefore subject to suit there.

In Davis v. Motive Parts Corporation D.C., 16 F.2d 148, the suit was for a patent infringement. The Heil Company, one of defendants, was a Wisconsin corporation. The suit was in New York and the District Judge held that where a foreign corporation accepted, filled, and received pay for orders through agents in the State where the agents lived, such foreign corporation should be considered as maintaining a place of business in the State where the agents lived. Without stating the contents of the affidavits relied upon, the court said: "In my opinion, a foreign corporation, transacting its business in the manner described by the affidavits filed upon behalf of the moving parties and as corroborated by defendants, should be held

to be here maintaining a regular and established place of business." That was an ultimate fact which, if supported substantially by evidentiary facts, was conclusive upon an appellate court.

The case of Thomson-Houston Electric Co. v. Bullock Electric Company, C.C., 101 F. 587, 589, was tried by the District Court of the Southern District of New York. This also was a patent infringement case, and the defendant raised the question of jurisdiction, as its office and principal place of business were in Ohio. The bill alleged infringement in the New York district by sales of machines by the Electric Company, as Eastern agents of the Manufacturing Company which was a foreign corporation. Service was made upon the electric company as such agents. The defense was that the manufacturer had no established place of business with the electric company, or in that district, or that State. The evidence showed an agreement in writing by which the manufacturing company provided the electric company the exclusive right in certain territories, including New York, for the sale of its machinery, appliances, and material on the basis of discounts from the published list or lowest selling prices f. o. b. at Cincinnati, payments to be made in thirty, sixty and ninety days from date of shipment, which the electric company would handle exclusively within the territory. The manufacturing company was to do the general advertising and furnish all catalogs and other descriptive matter, and the electric company was to have the privilege of returning for credit any part of the consignment stock, they being charged with whatever should be necessary for putting the stock in the same condition as when it left the manufacturing company's hands. The court said:

" * * * Making, using, or selling for use, would be an infringement; and the sale for use by the electric company in New York would, of course, be such. If the manufacturing company should do no more than sell to the electric company in Ohio, that would be an infringement ending in Ohio. But the manufacturing company does more. It controls and participates in sales in New York. Its property does not pass absolutely to the electric company in Ohio, for the latter has a right to return it before sale. So the manufacturing company essentially promotes and actively participates in the sales in New York, when made there by the electric company for use. The title of the manufacturing company first absolutely passes by that sale for use, in which it participates through the electric company. * * *. The offices of the electric company here constitute a regular and established place of this business."

Thereupon, the defendant's plea to the jurisdiction was overruled.

The case of Henderson v. Richardson Co., 4 Cir., 25 F.2d 225, 228, is also a patent infringement case. The service of process was made on one conducting business in the district as the alleged agent for a foreign corporate defendant. The corporation in response thereto filed an affidavit in which it merely alleged that it had no contract with such individual as an agent. It did not present or deny such contract with the alleged agent though it admitted that the latter had been advertising himself as a foreign company's agent. It was alleged generally that the alleged agent was merely a purchaser of its products when citing facts regarding their dealings. The court held that the affidavit in support of the motion to quash the service of process was insufficient in that it did not state facts, but relied on general conclusions. On this phase of the case, the order of the District Court in quashing the return of the marshall was set aside and the cause was remanded to the District Court that additional testimony might be heard with respect to the relationship existing between the agent and the foreign corporation. The court said:

" * * * If it shall then appear that Iron is in fact a mere purchaser of batteries and supplies from the battery company and not an agent maintaining a place of business for it in West Virginia, he will quash the return of service and dismiss the suit. * * * If, on the other hand, it shall appear that Iron, is acting as agent for the battery company, is maintaining for it a

regular and established place of business in Charleston, and is selling therefrom for the battery company articles alleged to infringe the patents of complainant, then the service of process will be sustained and the motion to quash overruled * * *."

Plaintiff cites authorities to the effect that in cases such as this it is immaterial that the agent and distributor pays its own expenses, and that it is likewise immaterial that the agent and distributor is a separate legal entity. We think that these cases, all but one of which we have just discussed, do not support either proposition. All that these cases hold is that the payment of business expenses and the fact of separate entities were not controlling under the facts of the cases cited. Certainly both matters are material evidence for consideration for whatever value they possess.

An interesting discussion of one of the issues here raised is found in International Shoe Co. v. State of Washington et al., 326 U.S. 310, 66 S.Ct. 154, 159, 161 A.L.R. 1057. The case is discussed in 46 Columbia Law Review 729. It was not a patent suit, but it involved the applicability of the state unemployment compensation statute of Washington to appellant, a Delaware corporation, and the constitutionality of the statute if so applied. One of the questions there raised was whether appellant had by its activities in the State of Washington rendered itself amenable to proceedings in the State of Washington to recover unpaid contributions to the unemployment compensation fund exacted by the statutes of that state.

Appellant in that case had no office in Washington and made no contracts either for sale or purchase of merchandise there. It maintained no stock of merchandise in that State and made no deliveries of goods in intrastate commerce. During the years in question it employed several salesmen under direct supervision and control of sales managers located in St. Louis. The salesmen resided in Washington; their principal activities were confined to that State; and they were compensated by commissions based upon the amount of their sales. Appellant supplied its salesmen with a line of samples which they displayed to prospective purchasers. On occasion they rented permanent sample rooms for exhibiting samples, in business buildings, or rented rooms in hotels or business buildings temporarily for that purpose. The cost of such rentals was reimbursed by appellant.

The authority of the salesmen was limited to exhibiting their samples and soliciting orders from prospective buyers, at prices and on terms fixed by appellant. The salesmen transmitted the orders to appellant's office in St. Louis for acceptance or rejection, and when accepted, the merchandise for filling the orders was shipped f. o. b. from points outside Washington to the purchaser within the State. All the merchandise shipped into Washington was invoiced at the place of shipment from which collections were made. No salesmen had authority to enter into contracts or to make collections.

After a discussion of the facts and the history of the jurisdiction of courts to render judgment in personam, the court said:

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely * * * whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. * * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties or relations. * * *

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which

564

requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. * *.

"Applying these standards, the activities carried on in behalf of appellant in the State of Washington were neither irregular nor casual. They were systematic and continuous throughout the years in question. They resulted in a large volume of interstate business, in the course of which appellant received the benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its rights. The obligation which is here sued upon arose out of those very activities. * * * Hence we cannot say that the maintenance of the present suit in the State of Washington involves an unreasonable or undue procedure.

"We are likewise unable to conclude that the service of the process within the state upon an agent whose activities establish appellant's 'presence' there was not sufficient notice of the suit, or that the suit was so unrelated to those activities as to make the agent an inappropriate vehicle for communicating the notice. * * *."

It will be noticed that in this language the Court said that appellant was conducting activities in the State of Washington, and, indeed, it was, for it was admitted that it was paying rentals for the rooms in which the agents displayed their goods. That fact alone was sufficient to "establish appellant's presence" in Washington, as stated in the opinion.

■ Whatever applicability, if any, this case may have on the question now before us, it certainly establishes the proposition that the "boundary line between those activities which justify the subjection of a corporation to suit, and those which do not" is a question of fact. It was so regarded by the District Court in this case and by counsel for plaintiff in its argument before the District Court. The latter court having found the facts in this respect contrary to plaintiff's contention, we think we have no authority to hold otherwise, since the facts as found are supported by substantial evidence.

The judgment of the District Court is Affirmed.