**MINNESOTA MINING & MFG. CO.**

v.

**NEISNER BROS. Inc., et al.**

United States District Court,
N. D. Illinois, E. D.

July 26, 1954.

See, also, D.C., 101 F.Supp. 926.

Edward A. Haight, Chicago, Ill., Harold J. Kinney, St. Paul, Minn., for plaintiff.

Meyer Weisenfeld, Detroit, Mich., Marshall & Marshall, Chicago, Ill., for defendants.

CAMPBELL, District Judge.

This is a suit for injunctive relief and damages for an alleged infringement of Patent No. 2,177,627, issued to plaintiff on the application of one Richard G. Drew. The patent relates to a transparent, pressure-sensitive adhesive tape, known commercially as "Scotch" brand cellophane tape. The accused tape is manufactured in Sombra, Ontario, Canada, by William J. Dahm and Essie Eileen Dahm, and is known as "Edaplast" cellophane tape.

The suit was originally brought against one defendant, Neisner Brothers, Inc., which sold Edaplast cellophane tape within the United States; the Dahms later intervened as parties defendant. On January 22, 1952, a preliminary injunction was entered, enjoining Neisner Bros. and the Dahms from further sale of the accused tape. Injunction writs were subsequently served on each defendant, on James Rose and Simon Walfish, doing business as Merchants Paper & Twine Company, and on Edatape, Inc., a corporation owned and controlled by Rose and Walfish. On August 5, 1952, a petition was filed by plaintiff, asking that each of said parties except Neisner Bros., Inc., be adjudged guilty of contempt of court for violation of the preliminary injunction. An order to show cause was entered on August 5, 1952, and copies of the order were served on each respondent.

The only defense offered in response to the order to show cause was the claim that the accused tape does not infringe the Drew patent. It was therefore agreed that the same evidence introduced at the hearing on the order to show cause might also be used at the trial of the case in chief. A single trial of all issues was had, and the cause was taken under advisement by the court.

All defendants admit the validity of the Drew patent, and properly so, for the claims in suit here have already been sustained by the Court of Appeals for this Circuit. Minnesota Mining & Manufacturing Co. v. International Plastic Corporation, 7 Cir., 1947, 159 F.2d 554, 556. Those claims are numbered 4, 5, 6,

7, 8, and 15. Claim 4, which is typical of the others, is written in these terms:

"'A transparent adhesive sheet comprising a non-fibrous transparent flexible film backing having non-porous surfaces and a water-insoluble normally tacky and pressure-sensitive transparent flexible adhesive coating, said adhesive coating being firmly united to said backing and the adhesive and backing being of such kinds that the back surface of the backing is inactive to the adhesive coating to a degree permitting unwinding of the adhesive sheet from rolls thereof without delamination or offsetting of adhesive.'"

As Claim 4 indicates, the Drew patent is a combination of a non-fibrous transparent, and flexible film backing with a water-insoluble, tacky, transparent and pressure-sensitive adhesive. The backing is described more particularly in other claims; thus, in Claim 6, it is described as a "cellulosic film," and in Claim 7 as a "regenerated cellulose film." Claims 4 and 15 do not prescribe the ingredients of the adhesive coating; however, Claims 5, 6 and 7 state that the adhesive should have a "rubbery" base, and Claim 8 states that the adhesive should be of the "rubber-resin type." It is apparent that Drew did not intend to define either an ideal backing or an ideal adhesive; he merely listed those qualities which the backing and adhesive must have in order to result in an acceptable adhesive sheeting.

Before Drew disclosed this combination of backing and adhesive, it was thought that rubbery adhesives must be coated on fibrous materials, such as cloth or paper. Drew successfully demonstrated that such adhesives might be coated on non-fibrous material, such as common cellophane, and thus devised an adhesive tape which might be used in a variety of new ways. As the Court of Appeals noted in the International Plastic Case, the Drew patent is not based on the novelty of any type of cellulose film, or any type of adhesive—it is based simply on the new combination of those two elements.

The accused tapes are also comprised of a cellophane backing, which is transparent and flexible, and an adhesive coating, which is water-insoluble, tacky, transparent, and pressure-sensitive. The exhibits introduced at the trial, even when viewed in the light of Dahm's own testimony, demonstrate that the accused tapes possess each of the many physical qualities described in the claims of the Drew patent. True, the adhesive coating in the accused tapes does not contain the same ingredients as the coating in plaintiff's tapes, but that is not significant, for Drew did not specify the precise ingredients which the coating should contain, and, as the Court of Appeals has held, he need not have provided any definite formula.

With that premise in mind, the court turns to the defense of non-infringement, the sole defense asserted by the defendants. Before the issuance of the preliminary injunction, the Dahms manufactured a tape which contained a synthetic resin adhesive, and no rubber whatever. The defendants contend now, as they did before the issuance of the preliminary injunction, that the absence of rubber distinguishes their tape from that of Drew, and necessitates a finding of non-infringement. With respect to that contention, the court need only repeat the views expressed in its Memorandum of December 21, 1951, Minnesota Mining & Mfg. Co. v. Neisner Bros., D.C., 101 F.Supp. 926, 928, when it was decided that the injunction should issue:

"Conceding that Claims 5, 6 and 7 of the Drew patent call for a 'rubbery base' adhesive and that Claim 8 calls for a 'rubber-resin type' adhesive, the mere fact that defendant employs a 100% synthetic resin adhesive is insufficient to remove defendant's adhesive from the purview of those claims. The normal construction of the expression 'rubbery base' is that the product is similar to rubber at least in some of its physical properties as, for example, in its

elasticity, stretchiness and the like. The adhesive coating of the accused tape clearly fulfills such a description. Similarly, the term 'rubber-resin type' adhesive properly indicates an adhesive having the physical properties of rubber-resin adhesives, which properties defendant's coating patently possesses. * * * By no stretch of the imagination can defendant's adhesive * * * be described in any other manner than as a 'water-insoluble, normally tacky and pressure-sensitive transparent adhesive coating'. It follows, therefore, that defendant's adhesive falls within the well-defined scope of Drew's claims."

On the basis of all the evidence adduced at the trial, the court adheres to the foregoing views. Cf., Minnesota Mining & Manufacturing Co. v. International Plastic Corp., supra, 159 F.2d at pages 556–558.

After the preliminary injunction was issued, the Dahms manufactured another type of adhesive tape. Again, the tape consisted of a water-insoluble, tacky, transparent, pressure-sensitive adhesive, coated on sheets of common cellophane; and again, the adhesive was comprised of ingredients which were somewhat different from the ingredients contained in plaintiff's tapes. The Dahms' new adhesive was made from rubber, varnish, and linseed oil, a formula disclosed by one Brandenberger in a French patent (No. 433,999). The defendants point out that Brandenberger's patent was issued prior to Drew's patent, and claim that Dahm followed the teachings of Brandenberger, rather than Drew. However, the Brandenberger patent was confined to electrical insulation devices, a far more limited field than the one which concerned Drew. Although the Brandenberger patent was not itself before the courts of this Circuit when the validity of Drew's patent was sustained, similar patents were then considered and distinguished from the Drew patent. In Minnesota Mining & Manufacturing Co. v. Pax Plastics Corp., D.C.1946, 65 F.Supp. 303, affirmed at 7 Cir., 159 F.2d 554, it

was held that the Kronstein patent (No. 1,944,562), which also relates to electrical insulations with adhesive coatings, was not at all relevant to the matters embraced by Drew's patent. The problems which confronted Kronstein and Brandenberger were not the same as those which confronted Drew, and their inventions were designed for correspondingly different uses. It was Drew, not Brandenberger or Kronstein, who first conceived the idea of coating a rubbery adhesive on cellophane for use as a packaging device, and, as stated earlier, the validity of Drew's patent is dependent on the combination of adhesive and cellophane, rather than on any collection of ingredients in the adhesive.

The court concludes, on the basis of all the evidence adduced at the trial, that both sets of Dahm tapes, those manufactured before and those manufactured after the preliminary injunction, infringe the claims of the Drew patent.

The remaining matters relate to plaintiff's petition to adjudge the defendants (except Neisner Bros., Inc.) and certain other parties in contempt of court. The plaintiff's exhibits, particularly those numbered 2, 23, and 25, demonstrate beyond doubt that the Dahms sold the accused tape after the issuance of the preliminary injunction to respondents Rose and Walfish, doing business as Merchants Paper & Twine Company, and to Edatape, Inc., a corporation controlled by Rose and Walfish. Those sales constituted direct disobedience to the injunction, copies of which were served on each of the respondents.

The sole substantive defense asserted by the respondents is the claim that the accused tapes do not infringe the plaintiff's patent, and the court has found that the defense is wholly without merit. However, even if the sales did not constitute infringements as a matter of law, the respondents would be in contempt of this court. The respondents made their private determination of the law, and they acted at their peril. United States v. United Mine Workers of America, 1947, 330 U.S. 258, 293, 67 S.Ct. 677, 91 L.Ed. 884.

The respondents who were not named parties to this cause have moved to dismiss the petition on the ground that this court lacks jurisdiction to punish them for contempt. The motion is presumably based on the fact that those respondents reside without this district. The motion is completely without merit, and it is accordingly denied.

Each respondent disobeyed the express terms of the preliminary injunction, and each is adjudged guilty of civil contempt of this court. An appropriate judgment for damages shall be entered after an accounting.

The facts described and the conclusions expressed herein shall stand as Findings of Fact and Conclusions of Law under Federal Rule 52(a), 28 U.S.C.A.

This cause is hereby referred to Joseph F. Elward, Esq., for an accounting of damages and for a determination of plaintiff's costs and attorney's fees necessarily incurred to prove the contempt found herein. After the accounting, plaintiff may, upon notice to defendants, submit to the court a suggested permanent injunction, consistent with the views expressed herein and proper as to form.