**TOWN et al. v. WILLIS.**

Civ. No. 4949.

United States District Court
W. D. Missouri, W. D.

Aug. 3, 1949.

Margolin & Reinhardt, Kansas City, Mo., Caesar & Revise, A. D. Caesar, Philadelphia, Pa., for plaintiffs.

C. Earl Hovey, G. D. Schmidt and G. D. McIlrath, Kansas City, Mo., for defendant.

DUNCAN, District Judge.

This is a suit for the infringement of Patent No. 2,392,513 issued on January 8, 1946 to Edward W. Town for an invention in cushions for "artificial" dentures. The application was filed April 8, 1942. The plaintiff Town is the patentee, and the plaintiff Ezo Products Company is a co-partnership composed of plaintiff, Julius Hollander and Harry Hollander. They are the exclusive licensees under said patent. A stipulation was entered into in which it was stipulated that: "Plaintiff manufactures and sells a device for insertion between the gums and a denture, made by impregnating a piece of sheet material with paraffin and cutting the sheet material to the form of the denture. Such paraffin is a non-soluble wax which is plastic but does not melt at body temperatures."

It was further stipuated that: "There is a distinct need for devices to be placed between the gum and the denture of the wearer thereof and Plaintiff's such devices are highly useful, have been commercially successful, have met with the approval of the public and serve to satisfy such need. Since June, 1944, Plaintiff has sold more than five million (5,000,000) of such devices."

It was further stipulated that at the time of the filing of this suit on December 22, 1947 the defendant George H. Willis was making and selling dental cushions as represented by Plaintiff's Exhibit "C."

The patented device is horseshoe-shaped, cut so as to fit into the mouth, between the plate and the gum. It is made of a light cotton flannel with nap on each side, impregnated with paraffin, a nonsoluble plastic that does not melt at body temperatures. The cloth out of which the device is made is colored pink to conform to the natural color of the gums and to the color of dentures, dipped in paraffin, and thereafter stamped out on a die to the shape in which they are sold to the consumer. The accused device is practically identical, except that it contains a heavier coating of paraffin.

Plaintiffs began manufacturing their device in the early part of 1943. Plaintiffs allege that during a period beginning shortly after they went into production and continuing to the time of the filing of this suit, the defendant has been making an almost exact copy of the device, which is an infringement of the patent sued on.

The defendant in his answer alleges that the said patent in invalid and void because:

"* * * said Town was not the original and first inventor of the alleged improvements described and claimed therein, but that the same in all material and substantial parts were invented, known to, and used by others in this country before the alleged invention or discovery thereof, were patented and described in printed publications in this and foreign countries before his alleged invention or discovery thereof, for more than one year prior to his application for patent, and were in public use and on sale in this country for more than one year prior to his said application." In his answer the defendant has listed fourteen patents as representing the prior art.

Defendant further alleges:

"a. That the matter covered by said Letters Patent was not a statutory subject of a patent.

"b. Because no invention was required to devise and perfect the alleged invention described and claimed in said patent in view of the state of the art existing prior to the alleged invention.

"c. Because the claims of the patent are indefinite, ambiguous and uncertain, and do not particularly point out and distinctly claim the part, improvement or combination which the patentee claimed as his invention or discovery; and that the claims of the patent are not distinct.

"d. Because the description of the alleged invention in the specification of the patent sued on, contains less than the whole truth relative to the invention or discovery alleged therein, or more than is necessary to produce the desired effect; and because the specification and claims are not in such full, clear, concise and exact terms as are required by the statute."

Defendant further alleges that by reason of the proceedings in the United States Patent Office during the prosecution of the application for said patent, that plaintiffs are estopped to claim for said patent a construction such as would cause said patent to cover or include the acts of the defendant of which the plaintiffs complain.

Defendant also alleges that the product manufactured and sold by the defendant and the process of manufacturing that product by the defendant are so substantially different from the claims of the Town patent, that the defendant is not guilty of infringement.

Defendant further alleges that plaintiffs have never manufactured and sold any cushions for dentures embodying the structures of the Town patent in suit.

Plaintiff Town, a resident of Philadelphia, Pennsylvania, has been a dental technician since 1928, and for the past twenty or more years has been interested in the problems relating to the manufacture of dental pads.

It is undisputed that the problem arising from the wearing of dentures is one that has never been quite fully solved, either by the dental profession, or by independent patents designed to alleviate pain and other problems incident to dentures. The gums change in contour, shape and size following the extraction of teeth, thus causing those interested in the problem some difficulty in arriving at a solution. Numerous patents have been granted on various types of devices intended to solve the problem.

Most of the patents pleaded by defendant have dealt with various phases of the subject. Apparently none of these patents have met with much success; the device designed by plaintiffs and placed on the market being the first one to be accepted by the public, as shown by the sales. It is not conceded—nor do I think the evidence shows—that the problem has been fully and completely solved by means of this device; but, apparently it satisfies a long felt demand and provides relief that has been long in coming. Plaintiffs' device may not be the last step, but unquestionably it represents a substantial advance in the use of artificial methods to solve the problem which exists with respect to dentures.

According to his testimony, plaintiff Town's experiments were prompted by his own problems arising from the wearing of dentures, both upper and lower. He experimented with numerous types of devices, including paper, cotton and cloth— none of which were successful. During all of the period of his investigation and experimentation, as a dental technician, he was familiar with the types of materials used in making dentures, i. e., the waxes and other materials used in the taking of impressions and in the construction of dentures, including paraffin.

Plaintiff Town is the patentee of another patent, No. 2,092,097 issued September 7, 1937 (application made October 11, 1935), in which he described a pad "cut and formed to the shape of the gum, said sheet being made of padded, felted, or molded cotton fibers or the like, which are held together by mechanical compression and not by means of any adhesive or sizing, * * *." This device admittedly was unsuccessful.

Town experimented further with various materials until, as he testifies, he conceived the idea of impregnating a material having a nap on both sides to form a cushion, with a wax which was plastic, but which would not melt at body heat. He conceived the idea of using paraffin for this purpose, and upon treating the material with the paraffin and shaping it to fit the gum, he found it impervious to moisture and also that it had sufficient pliability to adjust itself to conform to the shape of the gum and the surface of the denture; and, that the nap formed a cushion which eased the pressure.

I think there are two questions for determination by the court; (1) whether or not the device described in plaintiffs' patent is a patentable device; and if it is patentable, (2) whether or not the device being manufactured and sold by plaintiffs is covered by the patent.

■ First, patentability. Certainly the use of materials of various kinds, cut to the shape of the gum and the denture was not new. It was described in several prior

art patents, including that of the patentee himself in his patent No. 2,092, 097. If we were dealing here solely with the question of the shape of the device, or with the use of fabrics, I should unhesitatingly say that plaintiffs' patent was anticipated by the prior art, and that it was not patentable. But, as stated in a syllabus of an opinion by the late Judge Sanborn in National Hollow Brake-Beam Co. et al. v. Interchangeable Brake-Beam Co.,·8 Cir., 106 F. 693, 694:

"A new combination of old elements, by which a new and useful result is produced, or an old result is obtained in a more facile, economical, and efficient way, may be protected by patent as securely as a new machine or composition of matter."

We find in the prior art, the use of fabrics of various types cut to the shape of the dentures, but they had not been successful. The use of the fabrics on the one hand, and the shaping of the·material to conform to the denture and to the mouth on the other, had not been combined with the ·use..of a nonsoluble plastic wax that would not melt at body heat, to constitute a completed device, prior to this patent. Many of the prior patents provided for the impregnation of the cloth with various types of adhesive materials, but apparently none of them taught the impregnation with wax, of a cloth having a nap, so as to enable it to conform to the shape of the denture and to retain its shape and yet not deteriorate. In all of the other patents, the effectiveness of the material used in the impregnation was rapidly lost after it came into contact with the heat of the body and the saliva in the mouth, since they were soluble. To state it more concisely, none of the other devices were effective in the performance of the function they were intended to perform.

Town's application was rejected by the examiner on May 21, 1942 as lacking in invention over Rowe, Patent No. 1,917,902 July 11, 1933: 'Town (one of the present plaintiffs) Patent No. 2,092,097 September 7, 1937; and, Seguier-Brown (British) No. 460,887, January 28, 1937 and on the ground that there seemed to be no patentable differences disclosed·by the application.

The.application remained·before the examiner until September 22, 1943 during which time it went through the usual and customary changes of claims and examinations by the examiner. On that date it was finally rejected. Thereafter, on March 17, 1944 an appeal was taken to the Board of Appeals and on January 6, 1945 the Board of Appeals reversed the examiner with respect to claim 6, and affirmed as to claim 5, with a modification. Pursuant to the action of the Board, the patent was granted.

In the opinion of the Board of Appeals, in dealing with the prior art patents before the Board, it was pointed out that in such patents the impregnating material was "gum arabic" or "gum. tragacanth." The Board further held that "the appealed claims are not met by the art cited."

In his statement to the Board of Appeals, the examiner who denied the application stated:

"Rebasing materials for artificial dentures are old and specifically a rebasing material composed of a fabric impregnated with a gum. *The art does not teach the use of wax to impregnate the fabric.*" (Emphasis supplied.) It should be noted that gum is *soluble,* whereas wax is plastic, but *nonsoluble.*

[2] The action of the Patent Office, unless clearly wrong, must be sustained by this court. The burden was upon the defendant to show that the action of the Patent Office should be rejected by the court. Radio Corp. of America et al. v. Radio Engineering Laboratories, Inc., 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163; Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 171, 57 S.Ct. 675, 81 L.Ed. 983; General.Motors Corp. v. Kesling, 8 Cir., 164 F.2d 824,.827.

While commercial success alone in the sale of a patented device is not sufficient to sustain a patent or to render the device patentable, Rembert v. Coe, 78 U.S.App. D.C. 51, 136 F.2d 793; Durand v. Bethlehem Steel Co., 3 Cir., 122 F.2d 321, 323, yet where a device is accepted by the public and enjoys an extensive distribution; and, where other things intended to perform the same function have not been successful, the success of the device is a factor of probative value which may be considered along

with other evidence in determining whether or not the device is new, useful and novel, and thus patentable. Temco Electric Motor Co. v. Apco Mfg. Co., 275 U.S. 319, 328, 48 S.Ct. 170, 72 L.Ed. 298; Minnesota Mining & Mfg. Co. v. International Plastic Corp., 7 Cir., 159 F.2d 554, 558.

The stipulation heretofore mentioned admits that during the period from June, 1944 to the time of the filing of this suit on December 22, 1947 more than 5,000,000 of plaintiffs' dental pads had been sold. Patentee is now receiving royalties from such sales in the amount of $225.00 per week. In view of this evidence, the commercial success of what is apparently so, simple a "gadget" cannot be denied.

██ I think that defendant's evidence fails to show that the action of the Patent Office was clearly wrong, and therefore fails to meet that burden which is placed upon him. I am in agreement with the findings and conclusions of the Patent Office. Plaintiffs' device was simple, but it was new, novel and useful, filling a long felt need. I think that the device was patentable, and that it came within the statute. R.S. 4886, 35 U.S.C.A. § 31.

It would seem that defendant's position in denying that the device is patentable is further weakened by the fact that he filed an application for a patent on his own device—the accused device—which is practically identical in shape, material and construction, and which performs the same function in the same manner.

██ Having determined the validity of the patent, we next come to the question of whether or not the manufactured device conforms to the teachings of plaintiffs' patent. There were two claims in plaintiffs' patent. At the trial it was suggested by counsel for the plaintiffs that they did not contend that Claim 2 was infringed. However, they refused to withdraw that claim, and it is now before the court. In their briefs, plaintiffs do not press the matter of the infringement of Claim 2. Claim 2 provides:

"As an article of manufacture a cushion for artificial dentures formed of a strip of sheet material impregnated with a non-soluble wax which softens but does not melt at body temperature, said strip being cut at an acute angle with respect to the warp and woof of said sheet material."

There is no evidence in this case that there has been a straight strip or a strip cut on the bias with respect to the warp and woof of the material, which has been manufactured, sold or offered for sale by either party.

Claim 1 provides: "A cushion for an artificial denture comprising a piece of sheet material cut to the form of the denture and inserted between the denture and the gum, said material being impregnated with a non-soluble wax composition which is plastic but which does not melt at body temperature."

A careful reading of the description of the processes seems to clearly reveal and teach that the device may be formed either by cutting the impregnated material on the bias, as defined in Claim 2, leaving it in strips and allowing the user to form the pad to the shape and size of his denture; or, that the cushion may be cut from the impregnated material to form the denture prior to sale, as defined in Claim 1.

The device before us is cut in the shape of the denture. The drawings as shown by Figures 3, 4, 5, and 6 do not show the device claimed in Claim 1. Figures 1 and 2 show a strip with the nap visible prior to the time it is shaped to the mouth. The other figures all show the strip after it has been shaped to the mouth. Nowhere in the drawings is there shown the exact shape of the device which is before the court as represented by the patented device, or by the accused device. Strangely, the shaping conforms exactly to Figure 1 shown in the patentee's Patent No. 2,092,097 even to the V-shaped notch on the inside of the pad, which makes it adjustable to conform to the size of the denture.

In the specifications of Patent No. 2,-392,513 it is provided that a comparatively small amount of the plastic substance should be used so that the nap upon the fabric may be utilized to the fullest extent in creating and forming a cushion. Defendant contends that this process has not been complied within the commercial device.

I think a careful examination of the plaintiffs' device will show that there is a nap upon each side of the device. While it is true that it is pretty well held down by the wax, yet when it is subjected to body heat—even working it between the fingers—the nap is readily apparent, thus conforming to the teachings of plaintiffs' patent.

It would seem that the shape of the device, which is not new in the art, conforms to the teachings and to Claim 1, which says, in part:

"* * * a piece of sheet material cut to the form of the denture * * *"

The questions of the validity of the patent and whether or not the manufactured device conforms to the teachings of the patent having been determined in favor of the plaintiff, the next question is whether or not there has been an infringement. The other questions raised by the defendant in his answer and at the trial are determined against the defendant.

Even a casual observation of the two devices clearly indicates the similarity. They are practically identical in color and even to the V-shaped notch in the inside of the pad. The only distinction between them is that the accused device has considerably more paraffin than the patented device.

It is stipulated between the parties as to the manufacture of defendant's device that they are made in the following manner:

"(a) Fabric sheets (usually outing flannel) are first cut into panels approximately six feet long and eighteen inches wide.

"(b) Said panels of fabric are then colored by an ordinary dyeing process." (The defendant testified that he used a vegetable dye, which was placed in water. and the fabric dipped in the dye).

"(c) Next, the colored panels are dipped into a vat of melted paraffin, removed, suspended to permit excess paraffin to drain therefrom, and, when partially dry, are again dipped successively to place additional coats of paraffin on the panels. The paraffin specified in this paragraph is a nonsoluble wax which is plastic but does not melt at body temperatures.

"(d) When the last coat of paraffin is set, the coated panels are again cut into elongated strips about six feet long and two and one-half inches wide. The warp of the fabric of the panels and of said strips extends in parallelism with the longitudinal edges thereof and the woof crosses the warp in perpendicular relationship therewith.

"(e) Lastly, the dental pads are stamped from the strips through use of a machine having a die adapted for this purpose."

In this connection, defendant testified that he purchased the material in fifty yard bolts; that it was cut into smaller sheets before the process of impregnation is begun; that after the material was prepared, it was cut into strips $3\frac{1}{25}''$ wide; and, that these strips were then run through the machine which cut them to the form of the denture.

There is no evidence in the record tending to show just how the process of impregnation is carried on by the plaintiffs. The patentee did state, however, that the paraffin was not brushed as described in the patent, since that method was now "passe."

The defendant testified that he attempted to get as heavy a coating of paraffin upon the material as possible, since, in his opinion, it increased the efficiency of the device. Defendant's device has also apparently enjoyed commercial success.

Early in the manufacture of the device by the plaintiffs, some of them were shaped by hand; but, after production was started on a substantial scale, a stamping machine was used. Of course, it would be impractical as well as financially prohibitive, and probably physically impossible to handshape the device in any great quantity. It is my view that the method of shaping the device is not a part of the patent.

The conclusion I draw from defendant's position is that, even if the device is patentable, and if it is in conformity with the patent, which he denies, that he is still not guilty of infringement. The only practical difference between the devices is that one has more paraffin than the other, and that the groove designed to fit into the gum or into the teeth is more pronounced in the ac-

cused device than in the patented device. This seems to be purely a mechanical difference.

The defendant says that he obtained the original idea from his father, who used a like device, and that he also used a like device prior to his manufacture of it.

Following the filing of plaintiffs' application in 1942 and after numerous attempts to finance its promotion, the Hollanders, who are now engaged in its manufacture, financed a small campaign of advertising. The first advertisement concerning this device appeared in the Kansas City Star under date of January 24, 1943; the next was August 15, 1943 and others appeared on November 28, 1943 and thereafter at irregular intervals. The evidence also shows that it was advertised in other newspapers and magazines throughout the country.

In fact, the defendant admits that he read an advertisement of plaintiffs' product in 1943 or 1944. He says that he was distributing his product by mail before he saw the ad. He thinks he first saw it in 1944 in the Star; but, at any rate, it had been running in the Star for nearly a year before the defendant admits he saw it—in whatever publication it may have appeared.

In April 1944 the United States Government placed numerous German patents on display in Kansas City, and offered to sell licenses under said patents for the manufacture of devices described therein. This defendant, being interested in dental pads, reviewed the list of patents and found one German Patent No. 1,914,606 which provided for a pad to be cemented to a denture. It was described as "leather or other material." After the purchase of this patent in 1944 the defendant proceeded to advertise and sell his device, which is now the accused device, under the provisions of that patent, until he was advised by counsel that he could not do so.

The defendant made application to the Patent Office for a patent on his device, which was filed in December, 1944. Prior to that time the defendant had obtained by purchase through correspondence, the device manufactured by the plaintiffs. He insists that he had been selling his device pri-

or to the time he purchased it. Whether he had or whether he had not, he did obtain the pads prior to the time his application was filed. The application has been on file before the Patent Office since that time, without action.

It seems strange that two devices which are almost identical in shape, almost identical in color, one having more paraffin than the other, could have been conceived and placed on the market at so nearly the same time.

As to the form of the device, Fig. 1 in Town No. 2,092,097 had been available in the Patent Office since late in 1935. The teachings of plaintiff's patent with respect to the impregnation of the material was available from 1942.

I find no evidence that there was any conception and manufacture and sale of the accused device prior to the filing of the patent and prior to placing on the market the device manufactured by plaintiffs.

I can come to no other conclusion except that the accused device very clearly infringes the patented device.