See, also, 85 F.Supp. 483.

### TOWN et al. v. WILLIS.
### Civ. No. 4949.

United States District Court
W. D. Missouri, W. D.

March 16, 1950.

Abraham E. Margolin and John F. Reinhardt, Edward A. Smith, all of Kansas City, Mo., A. D. Caesar, C. W. Rivise, Philadelphia, Pa., of counsel, for plaintiff.

C. Earl Hovey, Gordon D. Schmidt, George David McIlrath, all of Kansas City, Mo., for defendant.

DUNCAN, District Judge.

On November 30, 1949 the court found that Edward W. Town was "the true, first and original inventor and discoverer of the invention described in Letters Patent No. 2,392,513;" that said Letters Patent were issued on January 8, 1946 and in all respects was a valid patent; said Letters Patent described an invention in cushions for artificial dentures; that the Ezo Prod-

ucts Company at the time of the filing of the suit resulting in the decree holding the patent valid, was the exclusive licensee of said Letters Patent.

The court further found that the device manufactured by the Ezo Products Company was infringed by a device made by the defendant George H. Willis, doing business under the firm name and style of "Sealtite Dental Pad Company" and the "defendant and his employees, agents, associates, confederates and representatives, and each of them, is and are hereby perpetually enjoined and restrained from manufacturing, selling, distributing, or causing to be made, sold or distributed, or otherwise handling or disposing, directly or indirectly, Cushions for Artificial Dentures made in acordance with Claim One of the patent in suit."

An order was entered staying the execution of the judgment pending appeal, provided that within fifteen days following the entry of the decree, the defendant file an undertaking under seal, to be approved by the court, in the maximum penalty of $15,000.00 conditioned for the satisfaction of said judgment in full, together with any profits and damages which may have been sustained by the plaintiffs and adjudged against the defendant between the time of the filing of the decree and any order affirming it. The defendant did not execute the supersedeas bond as provided in the order of the court.

On February 28, 1950 the plaintiffs filed a petition asking that the defendant be required to show cause why he should not be adjudged by the court to be in contempt for violating its decree in this cause, and be punished for the same.

The petition alleges that in violation of the court's order the defendant "has continued to practice the teachings of the patent in suit and is still continuing his acts of infringement."

The show cause order was issued on February 28, 1950 and the defendant filed his response thereto, alleging that he was unable to file the undertaking, i. e., the supersedeas bond, as provided in the decree of the court. The defendant alleges: "That the evidence which Petitioner identifies in paragraph ten (10) of its Petition for Order to Show Cause relates to 'dental base plates' produced subsequent to the aforesaid Decree and in accordance with the teaching of expired U. S. Letters Patent No. 606,198, issued to W. R. Evans on June 28, 1898, and pertaining to 'Dental Base Plates.'"

The respondent denies that he has intentionally or otherwise violated the injunction of the court. The matter came on for hearing, and the plaintiff, to sustain its petition, called the defendant as a witness, and he described the method of manufacture of the device he is now making, which is alleged by the plaintiff to be in violation of the court's injunction.

The issue is simple, and I think purely one of law. There is no dispute as to the facts. The sole and only question is whether or not the device now being made by the defendant out of what he described as a "soft absorbent material" infringes plaintiff's patent and manufactured device made of cotton flannel with nap on each side. Claim No. 1 of plaintiff's patent which the court ruled the defendant's original device infringed, provides: "A cushion for an artifical denture comprising a piece of sheet material cut to the form of the denture and inserted between the denture and the gum, said material being impregnated with a nonsoluble wax composition which is plastic but which does not melt at body temperature."

The method of manufacturing the accused device is fully described in the court's Memorandum Opinion filed herein on August 3, 1949, D.C., 85 F.Supp. 483. The device manufactured subsequent to the injunction, is identical in appearance, except under the closest scrutiny. Unless one's attention had been called to the fact that the accused device and the subsequently manufactured device were made of different kinds of cloth, one not concerned with distinguishing the difference could not be expected to do so.

The original accused device, as was the patented device, was made of cotton flannel with a nappy surface on each side, as de-

scribed in the specifications of the plaintiff's patent and in the Memorandum Opinion of the court.

Respondent has now substituted for that cloth, what he describes as a "soft absorbent material" and instead of dipping such material, after it is colored in indentically the same manner as the cotton flannel, a layer of paraffin and beeswax is caused to be formed in a shallow rectangular pan and the material is cut into strips, just as it was before, except narrower, and placed over the strip of paraffin and beeswax. A hot roller is then caused to be rolled over the cloth, thus causing it to be impregnated with the solution of heated paraffin and beeswax. The cloth composing the original accused device was impregnated with 100% paraffin, whereas the defendant says his present solution is composed of 99½% paraffin and ½% beeswax.

Thereafter the impregnated cloth is again cut into strips three inches wide and run through the same press and cut into identically the same shape and design as the accused device. Thereafter, the devices are packed 20 each in a box and sold in gross lots—12 packaged boxes to a container.

The defendant contends that the cloth from which the device is produced is impregnated on one side only, but an inspection both of the cloth from which the device is made and the device itself, clearly reveals that there is a substantial coating of paraffin on both sides, although unquestionably when the cloth is first impregnated, there is a greater amount on one side than on the other. After a comparatively short time, it is difficult from observation to determine the distinction between the amount on either side of the device.

The device thus created is identical in appearance, performs identically the same function in identically the same manner as the accused device. The only distinction is that one is made of a flannel cloth with nap on each side, and the other is made of a "soft absorbent material" and there is slightly more paraffin on the accused device than there is on the subsequently manufactured device, just as there was more paraffin on the accused device than there

was on the patented device, as discussed in the Memorandum Opinion.

The respondent contends that he is manufacturing the device in accordance with the teachings of Evans No. 606,198 patented June 28, 1898. It seems to me that it is scarcely necessary to describe the difference between the device now being made by the defendant and the device described in the Evans Patent. The Evans patent claims:

"1. A new product for making *base or trial plates for use by dentists,* consisting of a sheet of wax and a sheet of cloth, the two being united to form a composite sheet of wax and cloth, the cloth being on the side of the sheet which is to come in contact *with a plaster model,* and subsequently with the gums in a human mouth, substantially as and for the purpose set forth.

"2. *A dental base or trial plate* consisting of wax and cloth firmly united, the cloth being on the side of the plate which is to come in contact with the gums, substantially as and for the purpose hereinbefore set forth." (Emphasis supplied)

The specifications and claims clearly indicate that the material was designed to be used by dentists as a trial plate, and that it was not designed to be used as a pad between artificial dentures and the gum. In the Evans patent the cloth which adhered to the substance was to be used in the making of artificial dentures and not to be used as a protection to the gums after they had been made. I find absolutely no similarity between either the process or the product, as prescribed in the Evans and the device now being manufactured by the defendant.

Defendant says that the device now under consideration is not as efficient as the infringed device, and that he has had complaints about it, which he attributes to the lack of nap on the cloth from which the device is made.

The defendant advertises his device as a "Dental Base Plate" apparently in an attempt to conform to the teachings in the Evans patent. I am unable to find any similarity between the device being made by the defendant and a *base plate,* as described and claimed by Evans, as it is apparently

understood both in the Evans patent and by those familiar with the art. In other words, to advertise it as a "base plate" is a misnomer.

Respondent insists that the claim must be read in reference to the specifications, and that throughout the specifications the patentee describes a material that "has a nappy upper and lower surface," and that the nappy upper and lower surface is an essential element of the patent, and that in view of the description of such nappy material, the claim must be read so that the sheet of material· described in Claim No. 1 which is to be impregnated with a non-soluble wax composition must be such sheet of material as possesses a nappy surface on each side.

I think that while the nappy surface of the cloth specified in the specifications is an essential element of the patent, the real substance of the invention is the impregnation of the cloth with the particular type of wax which was used in its manufacture —"a non-soluble wax composition which is plastic but which does not melt at body temperature." In Smith v. Snow, 294 U.S. 1, loc. cit. 11, 55 S.Ct. 279, loc. cit. 283, 79 L.Ed. 721 the court said: "We may take it that, as the statute requires, the specifications just detailed show a way of using the inventor's method, and that he conceived that particular way described was the best one. But he is not confined to that particular mode of use, since the claims of the patent, not its specifications, measure the invention."

As discussed in the Memorandum Opinion, one of the problems of providing a dental pad of the type under consideration had been the type of wax used in the composition. Unquestionably the presence of nap on the surface rendered the device more efficient, but practically the same results would have been obtained without the use of the nap, just as has been suggested by the defendant with the device manufactured subsequent to the decree, where a "soft absorbent material" was used.

If the soft absorbent character of the cloth which is impregnated with the wax composition, which remains impervious to temperatures to which it is subjected in the mouth, performs identically the same function in· identically the same manner, it would seem that the mere elimination therefrom of the cushioning effect of the nap would not have defeated the granting of the patent originally, nor now enable the respondent to manufacture the device without infringing the patent.

In his statement to the Board of Appeals of the Patent Office, the Examiner stated: "Rebasing materials for artificial dentures are old and specifically a rebasing material composed of a fabric impregnated with a gum. *The art does not teach the use of wax to impregnate the fabric.*" Emphasis supplied)

Gum is soluble, whereas wax is plastic but non-soluble. "What has been taken is the substance of the invention"—the impregnation of the sheet material with a non-soluble wax composition which is plastic but which does not melt at body temperature.

I am convinced that the change made by defendant is colorable only; that it is clearly an infringement and that the defendant has violated the injunction of the court.

Apparently the defendant was not acting in bad faith in that respect. He sought the advice of counsel and advised the plaintiff what he intended to do.

The plaintiff is entitled to such profits as the defendant has made out of the manufacture of the device, together with a reasonable attorney's fee and the expense of presenting the matter to the court.

Findings and decree may be submitted in accordance herewith for approval.